**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SAMUEL BINGAMAN, WILLIAM SWIGERT, SHANE WILSON, and MARIA RUSKIEWICZ, individually and on behalf of all similarly situated persons, | ) ) ) ) ) ) | Case No. CIV-23-130-SLP |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| ROSALIE DUPUS, individually And on behalf of all similarly situated persons, | ) ) ) ) | Consolidated with: Case No. CIV-23-134-SLP |
| Consolidated Plaintiff, | ) ) | Judge: Scott L. Palk |
| v. | ) ) | |
| AVEM HEALTH PARTNERS, INC. | ) ) | |
| Defendant. | ) | |

**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Samuel Bingaman, William Swigert, Shane Wilson, Maria Ruskiewicz, and Rosalie Dupus (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant Avem Health Partners, Inc. ("Avem" or "Defendant") to obtain damages, restitution, and injunctive relief for the Class, as described below, from Defendant. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of counsel, and the facts that are a matter of public record.

## I.  <u>NATURE OF THE ACTION</u>

1.      This class action seeks to hold Defendant responsible for the harms it caused to Plaintiffs and approximately **271,303** other individuals (the "Class" or "Class Members") in a massive and preventable data breach occurring prior to May 14, 2022 (the "Data Breach"). During the Data Breach, an unauthorized third party accessed Defendant's systems and data, through its third-party vendor, where the highly sensitive personally identifiable information ("PII") and protected health information ("PHI") of Plaintiffs and the Class were being stored without sufficient data security.[1]

2.      The information compromised in the Data Breach includes confidential PII and PHI such as: names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnosis and treatment information (collectively the "Private Information," "Personal Information," or "Personal and Medical Information").

3.      Plaintiffs bring this class action lawsuit on behalf of themselves and on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their Private Information had been subject to the unauthorized access of an unknown third party.

4.      On information and belief, Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained in a condition

---

[1]  *See Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/4a2de676-9c02-4132-af60-243bb245f388.shtml (last visited Mar. 29, 2023) (posting of data breach).

vulnerable to a cyberattack. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

5.     In addition, Defendant failed to properly monitor the computer network and IT systems that contained the Private Information.

6.     Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct—since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

7.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of sordid crimes including, *inter alia*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' Social Security numbers, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

8.     As a result of the Data Breach, Plaintiffs and Class Members are exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now—and in the future—closely monitor their financial accounts to guard against identity theft.

9.      Plaintiffs and Class Members may also incur out of pocket costs for, *e.g.,* purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

10.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs and lost time, nominal damages, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

11.     Accordingly, Plaintiffs bring this action against Defendant seeking redress for its unlawful conduct and assert claims for: (1) negligence, (2) negligence per se; (3) invasion of privacy; (4) breach of implied contract; (5) unjust enrichment; and (6) breach of fiduciary duty.

## II.    PARTIES

### A. Plaintiffs

12.     **Plaintiff Samuel Bingaman** ("Bingaman") is a natural person and a citizen of the State of Oklahoma. Plaintiff Bingaman resides in Chickasha, Oklahoma. Plaintiff Bingaman received medical services from a healthcare organization serviced by Defendant. Plaintiff Bingaman received a letter from Defendant in December 2022, notifying him of the Defendant's Data Breach and that his Private Information was at risk due to the Data Breach.

13.     **Plaintiff William Swigert** ("Swigert") is a natural person and a citizen of the State of Oklahoma. Plaintiff Swigert resides in Oklahoma City, Oklahoma. Plaintiff Swigert received medical services from a healthcare organization serviced by Defendant.

Plaintiff Swigert received a letter from Defendant in December 2022, notifying him of Defendant's Data Breach and that his Private Information was at risk due to the Data Breach.

14.     **Plaintiff Shane Wilson** ("Wilson")  is a natural person and a citizen of the State of Oklahoma. Plaintiff Wilson resides in Oklahoma City, Oklahoma. Plaintiff Wilson received medical services from a healthcare organization serviced by Defendant. Plaintiff Wilson received a letter from Defendant in December 2022, notifying him of Defendant's Data Breach and that his Private Information was at risk due to the Data Breach.

15.     **Plaintiff Maria Ruskiewicz** ("Ruskiewicz") is a natural person and a citizen of the State of Colorado. Plaintiff Ruskiewicz resides in Denver, Colorado. Plaintiff Ruskiewicz received medical services from a healthcare organization serviced by Defendant. Plaintiff Ruskiewicz received a letter from Defendant in December 2022, notifying her of Defendant's Data Breach and that her Private Information was at risk due to the Data Breach.

16.     **Plaintiff Rosalie Dupus** ("Dupus") is a natural person and is a citizen of the State of Oklahoma. Plaintiff Dupus resides in Edmond, Oklahoma. Plaintiff Dupus received medical services from a healthcare organization serviced by Defendant. Plaintiff Dupus received a letter in December 2022, notifying her of Defendant's Data Breach and that her Private Information was at risk due to the Data Breach.

**B. Defendant**

17.     Upon information and belief, **Defendant Avem Health Partners, Inc.** is a Delaware corporation with its principal place of business and corporate offices located at

14201 Wireless Way, Suite B-100, Oklahoma City, Oklahoma. Avem provides financial, technology, management, and capital solutions to hospitals in rural markets.[2] Also upon information and belief, Avem Health Partners, Inc. is not a registered corporation in Oklahoma. As part of its business operations, Defendant collects and maintains the PII and PHI of Plaintiffs and the Class.

### III.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

19.    The Western District of Oklahoma has personal jurisdiction over Defendant because Defendant has its principal place of business in this District; conducts substantial business in this District through its headquarters, offices, and affiliates; engaged in the conduct at issue here in this District; and otherwise has substantial contacts with this District and purposely availed itself to the Courts in this District.

20.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant's principal place of business is in this District.

---

[2]*Avem Services*, AVEM HEALTH SYSTEM, https://avemhealth.com/services/ (last visited Mar. 29, 2023).

## IV.    FACTUAL ALLEGATIONS

**A. Defendant Collected and Stored the Private Information of Plaintiffs and the Class.**

20.    Avem provides "financial, technology, management, and capital solutions to hospitals in rural markets" and states that "their services benefit residents and their physicians."[3]

21.    In the ordinary course of business, Defendant collects, obtains, maintains, and is entrusted with the Private Information of Plaintiffs and Class Members.

22.    Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to it by Plaintiffs and Class Members safely, confidentially, and in compliance with all applicable laws.

23.    Defendant held, and continues to hold, the Private Information of Plaintiffs and Class Members.

24.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

25.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiffs and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, and to

---

[3] *Id.*

make only authorized disclosures of this information.

**B. Defendant's Data Breach.**

21.    On May 16, 2022, Avem learned of a data security incident that may have resulted in the unauthorized access of the Personal Information of Plaintiffs and the Class (approximately **271,303** individuals).[4] After an investigation, it was determined that an unauthorized party had access to Plaintiffs and Class Members' Private Information prior to May 14, 2022.[5] Avem does not disclose the specific dates of the Data Breach nor how many days it lasted.

22.    Defendant subsequently conducted a review of the files that were stored on the impacted servers, which was completed on October 6, 2022.[6] Avem determined that the files accessed by the unauthorized actor contained some or all of the following information: names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnosis and treatment information.[7]

23.    Despite knowledge of the Data Breach for nearly **seven (7) months**, Defendant did not begin notifying Plaintiffs and the Class until in or around December

---

[4] *See Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/4a2de676-9c02-4132-af60-243bb245f388.shtml (last visited Mar. 23,2023) (posting of data breach).

[5] *Id.*

[6] *Id.*

[7] *Id.*

2022.[8] On or about December 13, 2022, Avem sent letters ("Notice Letters") to Plaintiffs and the Class informing them of the Data Breach and that their Private Information may be at risk.[9]

24.     Upon information and belief, the Defendant was targeted due to its status as a healthcare organization and/or technology provider assisting healthcare organizations that collect, create, and maintain Personal and Medical Information. Moreover, the targeted Data Breach was expressly designed to gain access to private and confidential data, including (among other things) the Personal and Medical Information of Plaintiffs and the Class. Because of the Data Breach, data thieves were able to gain access to Defendant's files to access and acquire the unencrypted Personal and Medical Information of Plaintiffs and Class Members.

25.     In the Notice Letters Defendant provided to victims of the Data Breach, Defendant openly admits the Personal and Medical Information of Plaintiffs and Class Members may have been accessed without authorization by an unknown criminal actor.[10]

26.     Due to Defendant's inadequate and insufficient data security measures, Plaintiffs and Class Members now face an increased risk of fraud and identity theft and must deal with that threat forever. Plaintiffs believe their Personal and Medical Information was stolen in the Data Breach and is still in the hands of the hackers. Plaintiffs further

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

believe that their Personal and Medical Information was subsequently sold or published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals who perpetrate cyberattacks of the type that occurred here.

27.    Defendant had obligations created by HIPAA, contract, industry standards, common law, and its customers' promises and representations made to Plaintiffs and Class Members to keep their Personal and Medical Information confidential and to protect it from unauthorized access and disclosure.

28.    Plaintiffs and Class Members relied on the sophisticated Defendant to keep their Personal and Medical Information confidential and securely maintained, to use this information for business and/or medical purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their sensitive Personal and Medical Information.

29.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Personal and Medical Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for and had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' Personal and Medical Information from involuntary disclosure to third parties.

30.    Plaintiffs and Class Members entrusted their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

31.    Due to Defendant's inadequate and insufficient data security measures, Plaintiffs and the Class Members now face an increased risk of fraud and identity theft and must deal with that threat forever.

**C. The Data Breach was Foreseeable.**

32.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

33.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.  Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.[11] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

34.    In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System

---

[11] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (June 2022), at 6 (*available at* https://notified.idtheftcenter.org/s/).

(286,876 patients, March 2020), Defendant knew or should have known that their electronic records would be targeted by cybercriminals.

35.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[12]

36.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[13]

37.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**D.  Defendant Failed to Comply with FTC Guidelines.**

38.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security

---

[12] Ben Kochman, *FBI, Secret Service Warn of Targeted*, LAW360 (Nov. 18, 2019, 9:44 PM EST) (*available at* https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware).

[13] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Mar. 29, 2023).

practices. According to the FTC, the need for data security should be factored into all business decision- making.

39.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

40.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[14] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016) (*available at* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business#:~:text=Protecting%20Personal%20Information%3A%20A%20Guide%20for%20Business%201,IT.%20Protect%20the%20information%20that%20you%20keep.%20)

41.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.    Defendant failed to properly implement basic data security practices.

43.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

44.    Defendant was always fully aware of their obligations to protect the PII and PHI of Plaintiffs and Class members. Defendant were also aware of the significant repercussions that would result from its failure to do so.

**E.  Defendant Failed to Comply with Industry Standards.**

45.    As shown above, experts studying cyber security routinely identify healthcare providers and those in the healthcare industry as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

46.    Several best practices have been identified that at a minimum should be implemented by healthcare service providers, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption, making data unreadable without a key;

multi-factor authentication; backup data; and limiting which employees can access sensitive data.

47.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

48.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

49.     The foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**F. Defendant Was Obligated to Safeguard the Private Information Under HIPAA and its Conduct Violated HIPAA.**

50.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards

for electronic transactions and code sets to maintain the privacy and security of protected health information.[15]

51.    HIPAA provides specific privacy rules that require covered entities to implement comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[16]

52.    Defendant is a HIPAA covered business associate who electronically transmits health information in connection with its business transactions. As a regular and necessary part of its business, Defendant collects and custodies the highly sensitive Private Information of its clients' patients and health plan Members. Defendant is required under federal and state law to maintain the strictest confidentiality of the patient's Private Information that it requires, receives, and collects, and Defendant is further required to maintain sufficient safeguards to protect that Private Information from being accessed by unauthorized third parties.

53.    As a HIPAA covered entity, Defendant is required to ensure that it will implement adequate safeguards to prevent unauthorized use or disclosure of Private Information, including by implementing requirements of the HIPAA Security Rule and to

---

[15] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[16] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

report any unauthorized use or disclosure of Private Information, including incidents that constitute breaches of unsecured protected health information as in the case of the Data Breach complained of herein.

54.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

55.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

    a.    Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains, and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c.    Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    d.    Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.    Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

56.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

**G. Cybercriminals Have Used and Will Continue to Use Plaintiffs' and Class Members' PII and PHI for Fraud and Identity Theft.**

57.    PII and PHI are of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of sordid ways for criminals to exploit Plaintiffs and the Class Members and to profit off their misfortune.

58.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[17] For example, with the Personal and Medical Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[18] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class Members.

59.    Social Security numbers are particularly sensitive pieces of personal information.  As the Consumer Federation of America explains:

> **Social Security number.** This is the most dangerous type of personal information in the hands of identity thieves because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even

---

[17] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited Mar. 29, 2023) (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[18] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number?*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (last visited Mar. 29, 2023).

using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[19]

60.    PII and PHI are such valuable commodities to identity thieves that once this information has been compromised, criminals will use it for years.[20]

61.    This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running a targeted cyberattack against medical service providers like Defendant is to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.  Indeed, a Social Security number, date of birth, and full name can reportedly sell for $60 to $80 on the digital black market.[21]  "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[22]

---

[19] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Mar. 29, 2023).

[20] *Personal Information*: *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007) (*available at* https://www.gao.gov/products/gao-07-737).

[21] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, PCMAG (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web (last visited Mar. 29, 2023).

[22] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Mar. 29, 2023).

62.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, they **will** use it.[23]

63.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

64.    In some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information ***may continue for years***. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

65.    For instance, with a stolen Social Security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[25]

66.    The ramifications of Defendant's failure to keep its Class Members' PII secure are long lasting and severe. Once that information is stolen, fraudulent use of that

---

[23] Ari Lazarus (consumer education specialist, FTC), *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info (last visited Mar. 29, 2023).

[24] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007) (available at https://www.gao.gov/products/gao-07-737).

[25] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number?*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (last visited Mar. 29, 2023).

information and damage to victims may continue for years. Fraudulent activity might not show up for six to twelve months or even longer.

67.    Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

68.    Approximately 21% of victims do not realize their identify has been compromised until more than two years after it has happened. [26] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[27]

69.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[28]

70.    Defendant's offer of limited identity monitoring to *some* of Plaintiffs and the Class is woefully inadequate and will not fully protect Plaintiffs from the damages and harm caused by its failures. There may be a time lag between when harm occurs versus

---

[26] *See Medical ID Theft Checklist*, IDENTITYFORCE (*available at* https://www.identityforce.com/blog/medical-id-theft-checklist-2).

[27] *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages")*, EXPERIAN (*available at* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf).

[28] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION, 4 (Sept. 2013), (*available at* https://www.ftc.gov/news-events/news/press-releases/2010/10/ftc-offers-legal-assistance-guide-help-identity-theft-victims).

when it is discovered, and also between when PII is stolen and when it is used. Once the offered coverage has expired, Plaintiffs and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendant's gross negligence. Furthermore, identity monitoring only alerts someone to the fact that they have ***already been the victim of identity theft*** (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[29]  Nor can an identity monitoring service remove personal information from the dark web.[30] "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[31]

71.    As a direct and proximate result of the Data Breach, Plaintiffs and the Class had their PII and PHI exposed, have suffered harm as a result, and have been placed at an imminent, immediate, and continuing increased risk of further harm from fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing

---

[29] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM EST) https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html (last visited Mar. 29, 2023).

[30] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Mar. 29, 2023).

[31] *Id.*

or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come. Even more seriously is the identity restoration that Plaintiffs and other Class Members must go through, which can include spending countless hours filing police reports, following Federal Trade Commission checklists, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps.

72.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a.  Actual identity theft, including fraudulent credit inquiries and cards being opened in their names;

    b.  Trespass, damage to, and theft of their personal property including PII;

    c.  Improper disclosure of their PII;

    d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;

    e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII and that identity thieves have already used that information to defraud other victims of the Data Breach;

    f.  Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.  Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class members' personal information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their PII; and

k.  Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

73.     Moreover, theft of Personal and Medical Information is also gravely serious. PII and PHI is an extremely valuable property right.[32]

74.     Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Personal and Medical Information has considerable market value.

75.     Theft of PHI, in particular, is gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your

---

[32] *See, e.g.*, John T. Soma, J. Z. Courson & John Cadkin, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech 11, 3–4 (2009) (*available at* http://scholarship.richmond.edu/jolt/vol15/iss4/2) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[33]

76.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

77.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when Personal and Medical Information and/or financial information is stolen and when it is used.

78.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[34]

---

[33] *See What to Know About Medical Identity Theft*, FEDERAL TRADE COMMISSION (*available at* https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft-identity-theft).

[34] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), (*available at* https://www.gao.gov/products/gao-07-737).

79.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black- market" for years.

80.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

81.     Thus, Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

82.     Sensitive Personal and Medical Information can sell for as much as $363 per record according to the Infosec Institute.[35] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

83.     For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[36] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.  Each

---

[35] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Mar. 29, 2023).

[36] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION (July 2021) at 1 (*available at* https://www.ssa.gov/pubs/EN-05-10064.pdf).

of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

84.    Moreover, it is not an easy task to change or cancel a stolen Social Security number.

85.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security. number."[37]

86.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[38]

87.    Medical information is especially valuable to identity thieves.

---

[37] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015, 4:59 AM ET), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about- identity-theft (last visited Mar. 29, 2023).

[38] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, COMPUTER WORLD (Feb. 6, 2015, 5:49 AM PST), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Mar. 29, 2023).

88.    Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

89.    For this reason, Defendant knew or should have known about these dangers and strengthened their data, IT, and email handling systems accordingly. Defendant were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

**H. Defendant's Negligence.**

90.    Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to maintain an adequate data security system to reduce the risk of data breaches;

      b.    Failing to adequately protect the Personal and Medical Information of Plaintiffs and the Class;

      c.    Failing to properly monitor their own data security systems for existing intrusions;

      d.    Failing to train employees in the proper handling of emails containing the means by which the cyberattacks were able to first access Defendant's networks, and to and maintain adequate email security practices;

e.     Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.     Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

g.     Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access to only those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

h.     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

i.     Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

j.     Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

k.  Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

l.  Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

m.  Failing to train all members of its workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

n.  Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption).

o.  Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

p.  Failing to adhere to industry standards for cybersecurity.

91.  As the result of antivirus and malware protection software in need of security updating, inadequate procedures for handling phishing emails or emails containing viruses

or other malignant computer code, and other failures to maintain its networks in configuration that would protect against cyberattacks like the one here, Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Personal and Medical Information by allowing providing unsecured and unencrypted Personal and Medical Information to Defendant which in turn allowed cyberthieves to access its IT systems.

92.    Accordingly, as outlined below, Plaintiffs and Class Members now face an increased risk of fraud and identity theft.

**I.  Plaintiffs' and Class Members' Damages.**

93.    To date, Defendant has done very little to provide Plaintiffs and Class Members with relief for the damages they have suffered as a result of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered ***some victims*** 12 months of inadequate identity monitoring services, despite Plaintiffs and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

94.    The 12 months of credit monitoring offered to select victims of the Data Breach is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. What's more, Defendant places the burden squarely on Plaintiffs and Class Members by requiring them to expend time signing up for that service (or obtaining their own), as opposed to automatically enrolling all victims of this Data Breach.

95.     Plaintiffs and Class Members have been damaged by the compromise of their Personal and Medical Information in the Data Breach.

96.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

97.     Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

98.     Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Personal and Medical Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

99.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

100.    Plaintiffs and Class Members suffered actual injury from having their Personal and Medical Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Personal and Medical Information, a form of property that Defendant obtained from Plaintiff; (b) violation of her privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

101.    Defendant entirely failed to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PII.

102.    Plaintiffs and Class Members have been damaged by the compromise of their Personal and Medical Information in the Cyber-Attack.  Moreover, Defendant's delay in noticing affected persons of the theft of their PII and PHI prevented early mitigation efforts and compounded the harm.

103.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach.  Many victims suffered ascertainable losses in the form of out- of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

- Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

- Purchasing credit monitoring and identity theft prevention;

- Placing "freezes" and "alerts" with reporting agencies;

- Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

- Contacting financial institutions and closing or modifying financial accounts; and

104.    Closely reviewing and monitoring Social Security Number, medical insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

105.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Personal and Medical Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Personal and Medical Information is not accessible online and that access to such data is password protected.

**J.  Plaintiffs' Individual Experiences**

*i.  Plaintiff Samuel Bingaman's Experience*

106.  Plaintiff Samuel Bingaman provided Defendant his Personal and Medical Information in order to receive medical services.

107.  Plaintiff Bingaman's Personal and Medical Information was within the possession and control of Defendant at the time of the Data Breach.

108.  Plaintiff Bingaman received a Notice Letter from Defendant dated December 13, 2022, informing him that his name, date of birth, Social Security number, driver's license number, health insurance information, and/or diagnosis and treatment information was involved in the Data Breach.

109.  As a result of the Data Breach, Defendant directed Plaintiff Bingaman to take certain steps to protect his Personal and Medical Information and otherwise mitigate his damages.

110.  As a result of the Data Breach, Plaintiff Bingaman has been forced to spend time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the Notice Letter, reviewing and self-monitoring his financial accounts

statements and other personal information, exploring his options for best protecting himself, securing credit monitoring, and/or taking other continued actions in an attempt to lessen the harms to him as a result of the Data Breach.

111. Even with the best response, the harm caused to Plaintiffs and the Class cannot be undone.

112. Plaintiff Bingaman is very careful about sharing his Personal and Medical Information and has never knowingly transmitted unencrypted Personal and Medical Information over the internet or any other unsecured source.

113. Plaintiff Bingaman suffered actual injury and damages due to Defendant's mismanagement of his Personal and Medical Information before and throughout the Data Breach.

114. Plaintiff Bingaman suffered actual injury in the form of damages and diminution in the value of his Personal and Medical Information—a form of intangible property that he entrusted to Defendant for the purpose of providing healthcare related services, which was compromised in and as a result of the Data Breach.

115. Plaintiff Bingaman suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and he has suffered anxiety and increased concerns for the theft of his privacy since he received the Notice Letter. He is especially concerned about the theft of his full name paired with his Social Security number, address, and date of birth.

116. Plaintiff Bingaman has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen

36

Personal and Medical Information, especially his Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

117.    Plaintiff Bingaman has a continuing interest in ensuring that his Personal and Medical Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### ii.    Plaintiff William Swigert's Experience.

118.    Plaintiff William Swigert provided Defendant his Personal and Medical Information in order to receive medical services.

119.    Plaintiff Swigert's Personal and Medical Information was within the possession and control of Defendant at the time of the Data Breach.

120.    Plaintiff Swigert received a Notice Letter from Defendant dated December 13, 2022, informing him that his name, date of birth, Social Security number, driver's license number, health insurance information, and/or diagnosis and treatment information was involved in the Data Breach.

121.    As a result of the Data Breach, Defendant directed Plaintiff Swigert to take certain steps to protect his Personal and Medical Information and otherwise mitigate his damages.

122.    As a result of the Data Breach, Plaintiff Swigert has been forced to spend time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the breach notification letter, reviewing and self-monitoring his financial accounts statements and other personal information, exploring his options for best protecting himself, securing credit monitoring and identity theft protection services, and/or

taking other continued actions in an attempt to lessen the harms to him as a result of the Data Breach.

123.    Even with the best response, the harm caused to Plaintiffs and the Class cannot be undone.

124.    Plaintiff Swigert is very careful about sharing his Personal and Medical Information and has never knowingly transmitted unencrypted Personal and Medical Information over the internet or any other unsecured source.

125.    Plaintiff Swigert suffered actual injury and damages due to Defendant's mismanagement of his Personal and Medical Information before and throughout the Data Breach.

126.    Plaintiff Swigert suffered actual injury in the form of damages and diminution in the value of his Personal and Medical Information—a form of intangible property that he entrusted to Defendant for the purpose of providing healthcare related services, which was compromised in and as a result of the Data Breach.

127.    Plaintiff Swigert suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and he has suffered anxiety and increased concerns for the theft of his privacy since he received the Notice Letter. He is especially concerned about the theft of his full name paired with his Social Security number, address, and date of birth.

128.    Plaintiff Swigert has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen

Personal and Medical Information, especially his Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

129.    Plaintiff Swigert has a continuing interest in ensuring that his Personal and Medical Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### iii.    Plaintiff Shane Wilson's Experience.

130.    Plaintiff Shane Wilson provided Defendant his Personal and Medical Information in order to receive medical services.

131.    Plaintiff Wilson's Personal and Medical Information was within the possession and control of Defendant at the time of the Data Breach.

132.    Plaintiff Wilson received a Notice Letter from Defendant dated December 13, 2022, informing him that his name, date of birth, health insurance information, and/or diagnosis and treatment information was involved in the Data Breach.

133.     As a result of the Data Breach, Defendant directed Plaintiff Wilson to take certain steps to protect his Personal and Medical Information and otherwise mitigate his damages.

134.    As a result of the Data Breach, Plaintiff Wilson has been forced to spend time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the Notice Letter, reviewing and self-monitoring his financial accounts statements and other personal information, exploring his options for best protecting himself, securing credit monitoring and identity theft protection services, and/or taking

other continued actions in an attempt to lessen the harms to him as a result of the Data Breach.

135.    Even with the best response, the harm caused to Plaintiffs and the Class cannot be undone.

136.    Plaintiff Wilson is very careful about sharing his Personal and Medical Information and has never knowingly transmitted unencrypted Personal and Medical Information over the internet or any other unsecured source.

137.    Plaintiff Wilson suffered actual injury and damages due to Defendant's mismanagement of his Personal and Medical Information before and throughout the Data Breach.

138.    Plaintiff Wilson suffered actual injury in the form of damages and diminution in the value of his Personal and Medical Information—a form of intangible property that he entrusted to Defendant for the purpose of providing healthcare related services, which was compromised in and as a result of the Data Breach.

139.    Plaintiff Wilson suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and he has suffered anxiety and increased concerns for the theft of his privacy since he received the Notice Letter.

140.    Plaintiff Wilson has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen Personal and Medical Information.

141.    Plaintiff Wilson has a continuing interest in ensuring that his Personal and Medical Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### iv.    *Plaintiff Maria Ruskiewicz's Experience.*

26.    Plaintiff Ruskiewicz provided Defendant her Personal and Medical Information in order to receive medical services.

27.    Plaintiff Ruskiewicz' Personal and Medical Information was within the possession and control of Defendant at the time of the Data Breach.

28.    Plaintiff Ruskiewicz received a Notice Letter from Defendant in December 2022, informing her that her name, date of birth, health insurance information, and/or diagnosis and treatment information was involved in the Data Breach.

29.    As a result of the Data Breach, Defendant directed Plaintiff Ruskiewicz to take certain steps to protect her Personal and Medical Information and otherwise mitigate her damages.

30.    As a result of the Data Breach, Plaintiff Ruskiewicz has experienced actual misuse of her Private Information. Since the breach, Plaintiff Ruskiewicz has started receiving spam texts and spam phone calls.

31.    As a result of the Data Breach, Plaintiff Ruskiewicz has been forced to spend time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the Notice Letter, reviewing and self-monitoring her financial accounts statements and other personal information, exploring her options for best protecting herself, securing credit monitoring and identity theft protection services, and/or taking other

continued actions in an attempt to lessen the harms to her as a result of the Data Breach.

32.     Even with the best response, the harm caused to Plaintiff Ruskiewicz and the Class cannot be undone.

33.     Plaintiff Ruskiewicz is very careful about sharing her Personal and Medical Information and has never knowingly transmitted unencrypted Personal and Medical Information over the internet or any other unsecured source.

34.     Plaintiff Ruskiewicz suffered actual injury and damages due to Defendant's mismanagement of her Personal and Medical Information before and throughout the Data Breach.

35.     Plaintiff Ruskiewicz suffered actual injury in the form of damages and diminution in the value of her Personal and Medical Information—a form of intangible property that she entrusted to Defendant for the purpose of providing healthcare related services, which was compromised in and as a result of the Data Breach.

36.     Plaintiff Ruskiewicz suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and she has suffered anxiety and increased concerns for the theft of her privacy since she received the Notice Letter.

37.     Plaintiff  Ruskiewicz has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen Personal and Medical Information being placed in the hands of unauthorized third parties and possibly criminals.

38.     Plaintiff Ruskiewicz has a continuing interest in ensuring that her Personal and Medical Information, which, upon information and belief, remains in Defendant's

possession, is protected, and safeguarded from future breaches.

### v.    *Plaintiff Rosalie Dupus' Experience.*

142.   Plaintiff Rosalie Dupus provided Defendant her Personal and Medical Information in order to receive medical services.

143.   Plaintiff Dupus' Personal and Medical Information was within the possession and control of Defendant at the time of the Data Breach.

144.   Plaintiff Dupus received a Notice Letter from Defendant dated December 13, 2022, informing her that her name, date of birth, health insurance information, and/or diagnosis and treatment information was involved in the Data Breach.

145.    As a result of the Data Breach, Defendant directed Plaintiff Dupus to take certain steps to protect her Personal and Medical Information and otherwise mitigate her damages.

146.   As a result of the Data Breach, Plaintiff Dupus has been forced to spend time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the Notice Letter, reviewing and self-monitoring her financial accounts statements and other personal information, exploring her options for best protecting herself, securing credit monitoring and identity theft protection services, and/or taking other continued actions in an attempt to lessen the harms to her as a result of the Data Breach.

147.   Additionally, Plaintiff Dupus has "frozen" her credit with all three (3) credit reporting agencies.

148.    Plaintiff Dupus has spent considerable time researching her credit monitoring options. Plaintiff Dupus is considering purchasing LifeLock to address ramifications from the Data Breach.

149.    Even with the best response, the harm caused to Plaintiff Dupus and the Class cannot be undone.

150.    Plaintiff Dupus is very careful about sharing her Personal and Medical Information and has never knowingly transmitted unencrypted Personal and Medical Information over the internet or any other unsecured source.

151.    Plaintiff Dupus suffered actual injury and damages due to Defendant's mismanagement of her Personal and Medical Information before and throughout the Data Breach.

152.    Plaintiff Dupus suffered actual injury in the form of damages and diminution in the value of her Personal and Medical Information—a form of intangible property that she entrusted to Defendant for the purpose of providing healthcare related services, which was compromised in and as a result of the Data Breach.

153.    Plaintiff Dupus suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and she has suffered anxiety and increased concerns for the theft of her privacy since she received the Notice Letter.

154.    Plaintiff  Dupus has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen Personal and Medical Information being placed in the hands of unauthorized third parties and possibly criminals.

155.    Plaintiff Dupus has a continuing interest in ensuring that her Personal and Medical Information, which, upon information and belief, remains in Defendant's possession, is protected, and safeguarded from future breaches.

## V.    CLASS ACTION ALLEGATIONS

156.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

157.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated ("the Class") pursuant to Federal Rule of Civil Procedure 23.

158.    Plaintiffs propose the following Class definition, subject to amendment based on information obtained through discovery:

### Nationwide Class

> All persons residing in the United States who received a Notice Letter[39] from Defendant and whose PHI and PII was compromised as a result of the Data Breach[40] discovered in May 2022 .

159.    In the alternative to the Nationwide Class, Plaintiffs propose the following alternative classes by state, as follows:

---

[39] As defined herein.

[40] As defined herein.

**Oklahoma Subclass**

All residents of Oklahoma who received a Notice Letter[41] from Defendant and whose PHI and PII was compromised as a result of the Data Breach[42] discovered in May 2022.

**Colorado Subclass**

All residents of Colorado who received a Notice Letter[43] from Defendant and whose PHI and PII was compromised as a result of the Data Breach[44] discovered in May 2022.

160.    Excluded from all of the Classes defined above are Defendant's officers, directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

161.    Plaintiffs reserve the right to amend the definition of the Class or add a class or subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

162.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

---

[41] As defined herein.

[42] As defined herein.

[43] As defined herein.

[44] As defined herein.

evidence as would be used to prove those elements in individual actions alleging the same claims.

163.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of more than 200,000 individuals whose data was compromised in the Data Breach.

164.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a)    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Personal and Medical Information;

b)    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c)    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d)    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e)    Whether Defendant owed a duty to Class Members to safeguard their Personal and Medical Information;

f)    Whether Defendant breached their duty to Class Members to safeguard their Personal and Medical Information;

g)   Whether computer hackers obtained Class Members' Personal and Medical Information in the Data Breach;

h)   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i)   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j)   Whether Defendant's conduct was negligent;

k)   Whether Plaintiffs and Class Members are entitled to damages, civil penalties, and/or injunctive relief.

165.   <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Breach.

166.   <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have no interests antagonistic to those of other Class Members. Plaintiffs' Counsel are competent and experienced in litigating data breach class actions.

167.   <u>Predominance</u>. Defendant engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data were stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

168.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

169.   Defendant acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## VI.   <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
**NEGLIGENCE**
**(On behalf of Plaintiffs and all Class Members)**

170.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as if fully set forth herein.

171.   Defendant required the submission of Plaintiffs' and Class Members Personal and Medical Information as a condition of providing healthcare related services for the benefit of Plaintiffs and Class Members. HIPAA covered entities and business associates provided this Personal and Medical Information to Defendant.

172.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Personal and Medical Information for its own pecuniary benefit and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

173.    Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' Personal and Medical Information.

174.    Defendant had full knowledge of the sensitivity of the Personal and Medical Information and the types of harm that Plaintiffs and Class Members could and would suffer if the data were wrongfully disclosed.

175.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Personal and Medical Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt and adequate notice to those affected in the case of a data breach.

176.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair. . .

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

177.    Defendant also had a duty to use reasonable security measures under HIPAA which required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

178.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or Class Members.

179.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices, including sharing and/or storing the Personal and Medical Information of Plaintiffs and Class Members on its computer systems.

180.    Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Personal and Medical Information of Plaintiffs and Class Members, the critical importance of providing adequate security of that data, and the necessity for encrypting all data stored on Defendant's systems.

181.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's

misconduct also included its decisions not to comply with industry standards for the safekeeping of the Personal and Medical Information of Plaintiffs and Class Members, including basic encryption techniques freely available to Defendant.

182.   Plaintiffs and Class Members had no ability to protect their Personal and Medical Information that was in, and possibly remains in, Defendant's possession.

183.   Defendant was in a position and able to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

184.   Defendant had and continues to have a duty to adequately disclose that the Personal and Medical Information of Plaintiffs and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Personal and Medical Information by third parties.

185.   Defendant had a duty to comply with the industry standards set out above.

186.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Personal and Medical Information within Defendant's possession.

187.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' Personal and Medical Information.

188.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the Personal and Medical Information within Defendant's possession might have been compromised and precisely the type of information compromised.

189.    Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Personal and Medical Information to be compromised.

190.    As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding the type of Personal and Medical Information that has been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

191.    Defendant's breaches of duty caused Plaintiffs and Class Members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, and loss of control over their Personal and Medical Information.

192.    As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Personal and Medical Information, which is still in the possession of third parties, will be used for fraudulent purposes.

193.    There is a close causal connection between Defendant's failure to implement security measures to protect the Personal and Medical Information of Plaintiffs and Class Members and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members. The Personal and Medical Information of Plaintiffs and Class Members was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable

care in safeguarding such Personal and Medical Information, by adopting, implementing, and maintaining appropriate security measures.

194.    Plaintiffs seek an award of actual damages on behalf of themselves and the Class.

195.    In failing to secure Plaintiffs' and Class Members' Personal and Medical Information and promptly notifying them of the Data Breach, Defendant is guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights. Plaintiffs, therefore, in addition to seeking actual damages, seek punitive damages on behalf of themselves and the Class.

196.    Plaintiffs seek injunctive relief on behalf of the Class in the form of an order compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to consumer information.

## SECOND CAUSE OF ACTION
### NEGLIGENCE *PER SE*
**(On behalf of Plaintiffs and all Class Members)**

197.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

198.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant had a duty to Plaintiffs and the Class to provide fair and adequate computer systems and data security to safeguard the PHI and PII of Plaintiffs and the Class.

199.    Defendant is a covered entity under HIPAA, 45 C.F.R. §160.102, and as such is required to comply with the HIPAA's Privacy Rule and Security Rule. HIPAA requires

Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). The confidential data at issue in this case constitutes "protected health information" within the meaning of HIPAA.

200.    HIPAA further requires Defendant to disclose the unauthorized access and theft of the protected health information of Plaintiffs and the Class "without unreasonable delay" so that Plaintiffs and Class members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their personal information. *See* 45 C.F.R. §§ 164.404, 164.406, and 164.410.

201.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PHI and PII. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

202.    Defendant gathered and stored the PHI and PII of Plaintiffs and the Class as part of their business of soliciting their services to their clients and their clients' patients, which solicitations and services affect commerce.

203.    Defendant violated the FTC Act by failing to use reasonable measures to protect the PHI and PII of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

204.    Defendant breached its duties to Plaintiffs and the Class under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiffs' and Class members' PHI and PII, and by failing to provide prompt notice without reasonable delay.

205.    Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

206.    Plaintiffs and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

207.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA and the FTC Act were intended to guard against.

208.    Defendant breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's PHI and PII.

209.    Defendant breached its duties to Plaintiffs and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiffs and the Class.

210.    Defendant's violations of the FTC Act and HIPAA constitute negligence *per se*.

211.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

212.    The injury and harm that Plaintiffs and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

213.    Plaintiffs and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**INVASION OF PRIVACY**
**(On behalf of Plaintiffs and all Class Members)**

214.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as if fully set forth herein.

215.    Plaintiffs and Class Members had a legitimate expectation of privacy to their PHI and PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

216.    Defendant owed a duty to Plaintiffs and Class Members to keep their Personal and Medical Information confidential.

217.    Defendant intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted Personal and Medical Information of Plaintiffs and Class Members.

218.    Defendant allowed unauthorized and unknown third parties access to and examination of the Personal and Medical Information of Plaintiffs and Class Members, by way of Defendant's failure to protect the Personal and Medical Information.

219.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Personal and Medical Information of Plaintiffs and Class Members is highly offensive to a reasonable person.

220. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class Members disclosed their Personal and Medical Information to Defendant as a necessary condition of receiving healthcare, but privately with an intention that the Personal and Medical Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

221. The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiffs and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

222. Defendant acted with intention and a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

223. Because Defendant acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and Class Members.

224. As a proximate result of the above acts and omissions of Defendant, the Personal and Medical Information of Plaintiffs and Class Members was disclosed to third parties without authorization, causing Plaintiffs and Class Members to suffer damages.

225. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class

Members in that the Personal and Medical Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and Class Members.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and all Class Members)**

226.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

227.    Defendant required Plaintiffs and Class Members to provide, or authorize the transfer of, their Personal and Medical Information in order for Defendant to provide services. In exchange, Defendant entered into implied contracts with Plaintiffs and Class Members in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiffs' and Class Members' Personal and Medical Information and to timely and adequately notify them in the event of a data breach.

228.    Plaintiffs and Class Members would not have provided their Personal and Medical Information to Defendant had they known that Defendant would not safeguard their Personal and Medical Information, as promised, or provide sufficiently detailed notice of a data breach.

229.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendant.

230.    Defendant breached these implied contracts by failing to safeguard Plaintiffs' and Class members' Personal and Medical Information and by failing to provide them with timely and accurate notice of the Data Breach.

231.    The losses and damages Plaintiffs and Class members sustained (as described above) were the direct and proximate result of Defendant's breach of its implied contracts with Plaintiffs and Class members.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and all Class Members)**

232.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

233.    Plaintiffs and Class Members conferred a monetary benefit to Defendant when they provided their Personal and Medical Information and payment to their healthcare or insurance providers, who in turn used a portion of the payment to engage Defendant's services, including Defendant's guardianship of the Personal and Medical Information.

234.    Defendant knew that Plaintiffs and Class Members conferred a monetary benefit to Defendant when it accepted and retained that benefit. Defendant profited from this monetary benefit, as the transmission of Personal and Medical Information to Defendant from Plaintiffs' and Class Members' healthcare or insurance providers is an integral part of Defendant's businesses. Without collecting and maintaining Plaintiffs and Class Members' Personal and Medical Information, Defendant would have dramatically diminished businesses and profits.

235.    Defendant was supposed to use some of the monetary benefit provided to them from Plaintiffs and Class Members to secure the Personal and Medical Information belonging to Plaintiffs and Class Members by paying for costs of adequate data management and security.

236.    Defendant should not be permitted to retain any monetary benefit belonging to Plaintiffs and Class Members because Defendant failed to implement necessary security measures to protect the Personal and Medical Information of Plaintiffs and Class Members.

237.    Defendant gained access to Plaintiffs' and Class Members' Personal and Medical Information through inequitable means because Defendant failed to disclose that it used inadequate security measures.

238.    Plaintiffs and Class Members were unaware of the inadequate security measures and would not have entrusted their Personal and Medical Information to Defendant had they known of the inadequate security measures.

239.    To the extent this cause of action is pled in the alternative to the others, Plaintiffs and Class Members have no adequate remedy at law.

240.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Personal and Medical Information is used; (iii) the compromise and/or theft of their Personal and Medical Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal and Medical Information; (v) lost opportunity costs associated with effort expended and the loss of productivity

addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Personal and Medical Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Personal and Medical Information of Plaintiffs and Class Members; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal and Medical Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

241.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

242.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds from the monetary benefit that it unjustly received from them.

**SIXTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiffs and all Class Members)**

217.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

218.    In light of their special relationship as a medical provider and/or a technology

business providing services to a medical provider to Plaintiffs and Class members, Defendant became the guardians of Plaintiffs' and Class members' PII/PHI. Defendant became fiduciaries, created by their undertaking and guardianship of Plaintiffs' and the Class's current and former PII/PHI, to act primarily for the benefit of Plaintiffs and Class members. This duty included the obligation to safeguard Plaintiffs' and Class members' PII/PHI and to timely detect and notify them in the event of a data breach.

219.    In order to provide Plaintiffs and Class members medical services, Defendant required that Plaintiffs and Class members provide their PII/PHI.

220.    Defendant knowingly undertook the responsibility and duties related to the possession of Plaintiffs' and Class members' PII/PHI for the benefit of Plaintiffs and Class members in order to provide Plaintiffs and Class members medical services.

221.    Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of its relationship with them. Defendant breached their fiduciary duties owed to Plaintiffs and Class members by failing to properly encrypt and otherwise protect Plaintiffs' and Class members' PII/PHI. Defendant further breached their fiduciary duties owed to Plaintiffs and Class members by failing to timely detect the Data Breach and notify and/or warn Plaintiffs and Class members of the Data Breach.

222.    As a direct and proximate result of Defendant's breaches of their fiduciary duties, Plaintiffs and Class members have suffered or will suffer concrete injury, including but not limited to (a) actual identity theft; (b) the loss of the opportunity of how their PII/PHI is used; (c) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their PII/PHI; (d) out-of-

pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII/PHI; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII/PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' PII/PHI in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiffs and Class members.

223.   As a direct and proximate result of Defendant's breach of their fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## VII.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a)    For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

b)    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Personal and Medical Information, and

from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

c)     For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal and Medical Information compromised during the Data Breach;

d)     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e)     Ordering Defendant to pay for credit monitoring services for Plaintiffs and the Class in an amount to be determined at trial;

f)     For an award of actual damages, compensatory damages, nominal damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)     For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h)     Pre- and post-judgment interest on any amounts awarded; and

i)     Such other and further relief as this court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

Dated: March 31, 2023                    Respectfully submitted,


*/s/: William B. Federman*
William B. Federman, OBA #2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

***INTERIM CLASS COUNSEL AND
INTERIM LIAISON COUNSEL***

Kennedy M. Brian, OBA # 34617
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
kpb@federmanlaw.com

Benjamin F. Johns*
Samantha E. Holbrook*
**SHUB LAW FIRM, LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
(856) 772-7200
bjohns@shublawyers.com
sholbrook@shublawyers.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
Facsimile: 865-522-0049
gklinger@milberg.com

Samuel J. Strauss*
Raina C. Borrelli*
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com
sam@turkestrauss.com

Christian Levis*
Amanda Fiorilla*
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500 (Main)
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina*
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front St., Suite 520
West Conshohocken, PA 19428
(215) 399-4770 (Main)
achristina@lowey.com

*pro hac vice application forthcoming*

**OTHER      COUNSEL      FOR
PLAINTIFFS  AND  THE  PUTATIVE
CLASS**