# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SAMUEL BINGAMAN, WILLIAM )
SWIGERT, SHANE WILSON, and )
MARIA RUSCKIEWICZ, individually )     Case No. CIV-23-130-SLP
and on behalf of all similarly situated )
persons, )
)                                       Consolidated with:
)                                       Case No. CIV-23-134-SLP
Plaintiffs, )
)
And )                                   Honorable Judge Scott L. Palk
)
ROSALIE DUPUS, individually and )
on behalf of all similarly situated )
persons, )
)
Consolidated Plaintiff, )
)
v. )
)
AVEM HEALTH PARTNERS, INC., )
)
Defendant. )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS'  UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND.....................................................................................1

   A.   PROCEDURAL OVERVIEW OF THE LITIGATION. ...........................................1

   B.   NEGOTIATION OF THE PROPOSED SETTLEMENT. ...........................................2

III.  TERMS OF THE PROPOSED SETTLEMENT. ....................................................4

   A.   SETTLEMENT CLASS DEFINITION. ...................................................................4

   B.   SETTLEMENT BENEFITS. ...................................................................................4

   C.   ADMINISTRATION COSTS, SERVICE AWARDS, ATTORNEYS' FEES, AND LITIGATION EXPENSES. .....................................................................................6

   D.   CONFIRMATORY DISCOVERY REGARDING INFORMATION SECURITY IMPROVEMENTS. 6

   E.   THE PROPOSED NOTICE AND CLAIMS PROGRAM. ..........................................7

      1.   Direct Notice. ..........................................................................................7

      2.   Settlement Website...................................................................................8

      3.   Opt-Outs and Objections..........................................................................8

IV.   ARGUMENT AND AUTHORITIES........................................................................8

   A.   THE COURT SHOULD PRELIMINARILY APPROVE THE AGREEMENT AND AUTHORIZE NOTICE TO THE PROPOSED SETTLEMENT CLASS. .........................................8

      1.   Rule 23(e)(2)(A): The Proposed Class is Adequately Represented. ......11

      2.   Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length........12

3.  Rule 23(e)(2)(C) and the Jones Factors: The Settlement Relief is Fair, Reasonable, and Adequate. ................................................................................................ 12

    i.  Jones Factor 1:The Settlement was Fairly and Honestly Negotiated. ................. 12

    ii.  Rule 23(e)(2)(C)(i) and Jones Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt………………………... 13

    iii.  Jones Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation…………14

    iv.  Jones Factor 4: The Parties and their Counsel Aver that the Settlement is Fair and Reasonable. ...................................................................................................... 15

    v.  Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective. ................................................................................. 16

    vi.  Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable. ............... 17

V.  THE COURT SHOULD FIND IT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS. ........................................................................................................................ 18

  A.  RULE 23(A) REQUIREMENTS ARE SATISFIED .............................................................. 18

  B.  THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED. ............................................ 20

VI.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND SETTLEMENT ADMINISTRATOR. .......................................................................... 22

VII.  CONCLUSION .......................................................................................................... 24

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Brown v. Electrolux Home Products, Inc.*,

817 F.3d 1225 (11th Cir. 2016) ........................................................................21

*Camden I Condominium Ass'n, Inc. v. Dunkle*,

946 F.2d 768 (11th Cir. 1991) .........................................................................17

*CGC Holding Co., LLC v. Broad and Cassel*,

773 F.3d 1076 (10th Cir. 2014) .......................................................................21

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

888 F.3d 455 (10th Cir. 2017) .........................................................................16

*DeJulius v. New England Health Care Employees Pension Fund*,

429 F.3d 935 (10th Cir. 2005)..........................................................................22

*DG ex rel. Stricklin v. Devaughn*,

594 F.3d 1188 (10th Cir. 2010) .......................................................................20

*Dickey's Barbeque Restaurants, Inc.*,

No. 20-cv-3424, Dkt. 62 (N.D. Tex.)................................................................14

*Gordon v. Chipotle Mexican Grill, Inc.*,

No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ..................13

*Grunin v. Int'l House of Pancakes*,

513 F.2d 114 (8th Cir. 1975) ...........................................................................22

*Hammond v. The Bank of N.Y. Mellon Corp.*,

2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................................................14

*Harris v. Chevron U.S.A., Inc.*,

    No. 15-cv-0094, 2019 WL 5846917 (W.D. Okla. July 29, 2019)...........................9, 10, 18

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................18, 21, 22

*In re Crocs, Inc. Sec. Litig.*,

    306 F.R.D. 672 (D. Colo. 2014) ....................................................................................12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

    No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...................18, 21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013) ........................................................................................14

*In re Herff Jones Data Breach Litigation*,

    No. 21-cv-1329 (S.D. Ind.) ...........................................................................................14

*In re Molycorp, Inc. Sec. Litig.*,

    No. 12-cv-292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017)...........................................12

*In re Motor Fuel Temperature Sales Practices Litig.*,

    286 F.R.D. 488 (D. Kan. 2012) ....................................................................................10

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,

    997 F.3d 1077 (10th Cir. 2021) ....................................................................................17

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

    No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)...............................18

*In re Thornburg Mortg., Inc. Secs. Litig.*,

    912 F. Supp. 2d 1178 (D. N.M. 2012) ..........................................................................19

*Jones v. Nuclear Pharmacy, Inc.*,

    741 F.2d 322 (10th Cir. 1984) ............................................................................. 10

*Lucas v. Kmart Corp.*,

    234 F.R.D. 688 (D. Colo. 2006) ........................................................................... 12

*Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*,

    No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................... 16

*McPherson v. American Bank Systems*,

    No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) .......................................... 16, 17

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,

    923 F.3d 779 (10th Cir. 2019) ....................................................................... 19, 21

*Phillips Petroleum Co. v. Shutts*,

    472 U.S. 797 (1985) ............................................................................................. 22

*Trevizo v. Adams*,

    455 F.3d 1155 (10th Cir. 2006) ........................................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,

    136 S.Ct. 1036 (2016) .......................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................................................. 19

*Winstead v. ComplyRight, Inc.*,

    No. 1:18-cv-04990 (N.D. Ill.) ............................................................................... 14

## **Rules**

Fed. R. Civ. P. 23 ...................................................................................... passim

**<u>Treatises</u>**

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ............................................................ 13

4 W. Rubenstein, Newberg on Class Actions  (5th ed. 2015). .......................................... 9, 21

I.    **INTRODUCTION**

Plaintiffs Samuel Bingaman, William Swigert, Shane Wilson, Rosalie Dupus, and Maria Ruskiewicz (collectively, "Plaintiffs") respectfully move under Federal Rule of Civil Procedure 23(e) ("Rule"), for preliminary approval of a class action settlement between themselves and Defendant Avem Health Partners, Inc. ("Avem" or "Defendant") (together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement ("Agreement"),[1] if approved, will resolve the claims asserted by Plaintiffs and will provide substantial monetary and injunctive relief to Settlement Class Members whose personally identifiable information ("PII") and protected health information ("PHI") may have been compromised in a data security incident occurring on or before May 14, 2022 (the "Data Security Incident").

II.    **FACTUAL BACKGROUND**

A. **Procedural Overview of the Litigation.**

Avem provides financial, technology, management, and capital solutions to hospitals in rural markets. (*See* Am. Consolidated Class Action Compl. ("Compl.") ¶ 20, p. 7 (ECF No. 38)). In the ordinary course of business, Avem collects, obtains, and is entrusted with the PII and PHI of Plaintiffs and Settlement Class Members. (*Id.* ¶ 21, p. 7).

On May 16, 2022, Avem learned of a data security incident that may have resulted in the unauthorized access of Plaintiffs' and the Class's PII/PHI (approximately 271,303

---

[1] Attached as Exhibit A to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), filed contemporaneously herewith. Unless otherwise noted capitalized terms have the same meaning assigned to them in the Settlement Agreement ("SA").

individuals). (*Id.* ¶ 21, p. 8). The types of information potentially exposed included names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnosis and treatment information. (*Id.* ¶ 22, p. 8). Defendant sent notice of the Data Security Incident via mail to Plaintiffs and the Settlement Class on or about December 12, 2022, informing them that their PII/PHI may be at risk. (*Id.* ¶ 23, pp. 8–9).

After Avem announced the Data Security Incident, four (4) class action lawsuits were filed against Avem in the District Court of Grady County, State of Oklahoma –  (i) *Bingaman v. Avem Health Partners, Inc. et al.*, Case No. CJ-2022-239 (Dec. 29, 2022); (ii) *Dupus v. Avem Health Partners, Inc., et al.*, Case No. CJ-2023-2 (Jan. 3, 2023); (iii) *Swigert, et al. v. Avem Health Partners, Inc., et al.*, Case No. CJ-2023-8 (Jan. 11, 2023); and (iv) *Ruskiewicz v. Avem Health Partners, Inc.*, Case No. CJ-2023-36 (Feb. 2, 2023). These actions were subsequently removed and/or consolidated into the instant matter before the United States District Court for the Western District of Oklahoma, and William B. Federman of Federman & Sherwood was appointed Interim Class Counsel (ECF No. 37).

### B. Negotiation of the Proposed Settlement.

This Settlement resulted from good faith, arm's-length settlement negotiations, as well as a full-day mediation session on May 18, 2023, with highly respected mediator, Bennet G. Picker. (Federman Decl., ¶ 4).  Although the Parties did not resolve the case during the mediation session, significant progress was made. (*Id.* ¶ 4).  After the conclusion of the mediation session, the Mediator provided a mediator's proposal to the Parties, which

was considered by Plaintiffs and Defendant for approximately one week. (*Id.*).   After further discussions with the Mediator, the Parties agreed to accept the proposal. (*Id.*). The Mediator's proposal resulted in an agreement to settle this matter in principle. (*Id.*). In the weeks that followed the mediation, the Parties continued to negotiate the remaining terms of the Settlement and drafted a comprehensive Settlement Agreement with accompanying exhibits. (*Id.*). The Parties also solicited cost proposals from potential settlement administrators. (*Id.* ¶ 7).

Before settlement negotiations, Plaintiffs sought and obtained informal discovery from Avem on a number of topics, including: the number of individuals whose PII was compromised during the Data Security Incident; the types of PII/PHI exposed; the mechanics of the Data Security Incident; the remedial actions Avem took after the Data Security Incident; and the terms of potentially applicable insurance coverage. (*Id.* ¶ 5). This information was supplemented with additional information provided through the Mediator during the Mediation and after the proposal was made.

The information received allowed Plaintiffs' counsel, who are experienced in data breach class actions, to conduct settlement negotiations with a thorough understanding of the strengths and weaknesses of Plaintiffs' claims, the size and scope of the potential class, the ability to give notice to the proposed class, and the financial resources available to facilitate a settlement. (*Id.* ¶ 6). Equipped with this knowledge, and their significant experience litigating and resolving similar actions, Plaintiffs' counsel negotiated what they believe to be a fair, adequate, and reasonable settlement worthy of presentation to the Court. (*Id.* ¶ 8).

### III.    TERMS OF THE PROPOSED SETTLEMENT.

#### A. Settlement Class Definition.

For settlement purposes only, Plaintiffs propose certification of the following class:

> all individuals who were sent notification by Avem that their PII/PHI (names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnosis and treatment information) was or may have been compromised in the Data Security Incident.[2]

(SA, ¶ 38).

#### B. Settlement Benefits.

Under the Settlement Agreement, Avem will create a $1,450,000 non-reversionary cash Settlement Fund.  (*Id.* ¶¶ 41, 45–46). The Settlement Fund will be used to pay: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Out-of-Pocket Losses; (iv) Approved Claim(s) for Lost Time; (v) Approved Claims for Credit Monitoring and Identity Theft Protection Services; (vi) Approved Claims for Alternative Cash Payments; (vii) Service Awards Payments approved by the Court, (viii) Attorneys' Fee Award and Costs approved by the Court; and (ix) Residual Cash Payments. (*Id.*  ¶ 49).  Following payment of the above expenses, any amount remaining in the Net Settlement Fund will be paid to the Non-Profit Residual Recipient. (*Id.*).

All Settlement Class Members may submit a claim for up to Seven Thousand Dollars and Zero Cents ($7,000.00) for reimbursement of Documented Out-of-Pocket

---

[2] Excluded from the Settlement Class are: (i) the judges presiding over this Action, and members of their direct families; and (ii) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. (SA, ¶ 38).

Losses. (*Id.* ¶ 51).  To receive reimbursement for Documented Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. (*Id.*).

Settlement Class Members may also submit a claim for reimbursement of Lost Time for up to five (5) hours at twenty-five dollars ($25.00) per hour. (*Id.* ¶ 53). Settlement Class Members can receive reimbursement of Lost Time with an attestation that the time spent was reasonably related to mitigating the effects of the Data Security Incident. (*Id.*). A claim for Lost Time may be combined with a claim for reimbursement for Documented Out-of-Pocket Losses, but in no circumstance will a Settlement Class Member be eligible to receive more than the Seven Thousand Dollars and Zero Cents ($7,000.00) – the individual cap. (*Id.*).

Further, all Settlement Class Members are eligible to enroll in three (3) years of three-bureau Credit Monitoring and Identity Theft Protection Services provided by Sontiq,[3] regardless of whether the Settlement Class Member submits a claim for reimbursement of Documented Out-of-Pocket Losses or Lost Time. (*Id.* ¶ 56).

Additionally, in lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses, reimbursement for Lost Time, and/or Credit Monitoring and Identity Theft Protection Services, all Settlement Class Members may elect to submit a claim for a one-

---

[3] *See* https://www.sontiq.com/.

time Alternative Cash Payment of up to One Hundred Dollars and Zero Cents ($100.00).
(*Id.* ¶ 57).

### C. Administration Costs, Service Awards, Attorneys' Fees, and Litigation Expenses.

The Settlement Fund will also be used to pay the reasonable costs of notice, settlement administration, court approved service awards to the class representatives, and court approved attorneys' fees and litigation costs. (*Id.* ¶ 49).

After a competitive bidding process, the Parties mutually agreed to retain Simpluris to perform settlement administration and notice services, subject to Court approval. (*Id.* ¶ 37).

Plaintiffs and Class Counsel will apply to the Court for awards to the Class Representatives for their service to the Settlement Class. Subject to the Court's approval, the fund will be used to pay up to $1,500 to each of the five Plaintiffs as a service award. (*Id.* ¶ 91).

Class Counsel will also apply to the Court for an award of attorneys' fees and reimbursement of litigation costs and expenses. Subject to the Court's approval, Class Counsel will seek up to 30% of the Settlement Fund as attorneys' fees, plus reimbursement of up to $35,000 for their reasonable costs and expenses. (*Id.* ¶ 93).

### D. Confirmatory Discovery Regarding Information Security Improvements.

In addition to monetary consideration, Avem has agreed to provide confirmatory discovery demonstrating remedial efforts to protect Settlement Class Members' PII/PHI. (*Id.* ¶ 68).

### E.  The Proposed Notice and Claims Program.

#### 1.  Direct Notice.

Subject to the Court's approval, the Parties propose individually notifying each Settlement Class Member through direct notice via U.S. Mail of the Settlement. (*Id.* ¶ 73). Avem will submit to the Settlement Administrator the name and mailing address of each known class member within seven (7) days of the entry of the Preliminary Approval Order. (*Id.* ¶ 72(a)). The Settlement Administrator will use this data, along with other reasonably available sources, to send notice through U.S. Mail. (*Id.* ¶¶ 72–73).

Within thirty (30) days after the date of mailing of the Postcard Notice to the Settlement Class Members, the Settlement Administrator shall determine whether Notice to any Settlement Class Member was returned and/or undeliverable ("Undeliverable Notice List"). (*Id.* ¶ 74). Within forty (40) days of mailing of the Postcard Notice, the Settlement Administrator shall perform additional levels of skip tracing on the Undeliverable Notice List to attempt to identify an alternative physical address for the Settlement Class Members and will re-mail the Postcard Notice to the Settlement Class Members to the extent an alternative physical address is identified through Settlement Administrator's efforts. (*Id.*). A reminder notice may also be mailed to all Settlement Class Members who have not submitted a claim thirty (30) days prior to the Claims Deadline. (*Id.* ¶ 72(e)).

The notices include a description of the material terms of the Settlement; the date by which Settlement Class Members may submit a claim; the date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final

Approval Hearing will occur; and the address of the Settlement Website. (*Id.* at Exs. 1, 3–4). Notice will also be posted on the Settlement Website. (*Id.* ¶ 43). Settlement Members may submit their Claim Forms through the Settlement Website or by mail. (*Id.* ¶ 63).

### 2. Settlement Website.

The Settlement Administrator will establish a Settlement Website, which will contain pertinent Settlement information and will provide links to relevant case documents. (*Id.* ¶ 43). The Settlement Website will remain operational until at least sixty (60) days after all Settlement Payments have been distributed. (*Id.*).

### 3. Opt-Outs and Objections.

All forms of notice explain: (i) the procedure by which a Settlement Class Member can exclude themselves from the Settlement prior to the Opt-Out Deadline; and (ii) the procedure for a Settlement Class Member to object to the Settlement or Class Counsel's applications for awards of attorneys' fees, costs and expenses, or Service Awards to Settlement Class Representatives prior to the Objection Deadline. (*Id.* at Exs. 1, 3–4). The proposed Opt-Out and Objection Deadlines are sixty (60) days after the date of the Preliminary Approval Order. (*Id.* ¶¶ 24, 25).

## IV.    <u>ARGUMENT AND AUTHORITIES</u>

### A. The Court Should Preliminarily Approve the Agreement and Authorize Notice to the Proposed Settlement Class.

Court approval is required for any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e). Approval is a two-step process. "In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the

settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement." *Harris v. Chevron U.S.A., Inc.*, No. 15-cv-0094, 2019 WL 5846917, at *2 (W.D. Okla. July 29, 2019). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015). Second, after preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See id.* At the final fairness hearing, the Court also addresses any objections to the treatment of the litigation as a class action or objections to the terms of the settlement. *See Harris*, 2019 WL 5846917, at *2.

Before the Court can direct notice to the class, a plaintiff must "show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B). Approval under Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (i) whether "the class representatives and class counsel have adequately represented the class"; (ii) whether the settlement "was negotiated at arm's length"; (iii) whether "the relief provided for the class is adequate"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D).[4] In determining whether the relief provided

---

[4] Rule 23(e)(C)(iv) and Rule 23(e)(C)(3) also requires the identification of any additional agreements related to the settlement. Class Counsel represents that there are no agreements

is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

The Tenth Circuit has also identified four additional factors (partially overlapping with the Rule 23(e)(2) factors) to be considered in assessing whether a settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable" (the "*Jones* Factors"). *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

Preliminary approval of a proposed settlement is appropriate "where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* at *2 (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). Here, because the Settlement Agreement is fair, reasonable, and adequate

---

related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Simpluris to perform notice and settlement administration services if this motion is granted by the Court. (*See* Federman Decl., ¶ 9)

under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this Court should grant preliminary approval and allow notice to be issued to the Class.

### 1. Rule 23(e)(2)(A): The Proposed Class is Adequately Represented.

This Court previously considered Class Counsel's qualifications when appointing William B. Federman as Interim Class Counsel (ECF No. 37). Class Counsel have extensive experience litigating complex and class actions and have demonstrated success in litigating data security breach class actions. (Federman Decl., ¶ 8, Ex. 2). Class Counsel have adequately represented the class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from Avem regarding the incident, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. (*Id*. ¶ 5). The extensive work done by Class Counsel provided Class Counsel with ample information to negotiate this Settlement. (*Id*. ¶¶ 5–6).

The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. (*Id*. ¶ 10). Their claims and interests align with those of the Settlement Class. (*Id.*). Thus, this factor weighs in favor of granting preliminary approval.

### 2. Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

"Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, Case No. 12-cv-292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014)).

Here, the proposed settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Bennett G. Picker. (*See* Federman Decl., ¶ 4). As part of the mediation process, the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id.* ¶ 5). The fact that the Settlement was achieved through well-informed and arm's-length neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### 3. Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair, Reasonable, and Adequate.

#### i. *Jones* Factor 1:The Settlement was Fairly and Honestly Negotiated.

Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This presumption reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the

fairness consideration of Rule 23(e).

In this case, the Parties engaged in a full-day mediation session with well-regarded mediator Bennett G. Picker. (Federman Decl. ¶ 4). Although the mediation did not result in a settlement, significant progress was made. (*Id.*). The Parties eventually accepted a mediator's proposal after further discussions with the Mediator and careful consideration of the proposal. (*Id.*). The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Picker supports the conclusion that the Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011).

> ii. **Rule 23(e)(2)(C)(i) and *Jones* Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.**

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of a successful result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue Avem would likely assert several potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just

to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses Avem could assert—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### iii. *Jones* Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.

The Settlement guarantees Class Members real relief and value for their harms as well as protections from future fall-out from the Data Security Incident. The proposed settlement provides a $1,450,000.00 Settlement Fund from which the approximately 271,303 Settlement Class Members can submit a claim for substantial relief, as outlined above. This compares quite favorably to terms approved by courts in similar data breach cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,* No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million – approximately $0.76 per class member); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action involving more than 1 million people that settled for $4.35 million – approximately $4.35 per class member); *Winstead v. ComplyRight, Inc*., No. 1:18-cv-04990 (N.D. Ill.) (data breach class action involving 665,689 that settled for $3.025 million – approximately $4.54 per class member).

iv.   *Jones* **Factor 4: The Parties and their Counsel Aver that the Settlement is Fair and Reasonable.**

The judgment of the Parties and their counsel also supports the finding that the settlement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, their own experience in other data breach litigation, and reported settlements in other data breach class actions. The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who has litigated numerous data breach cases, spoken to victims of other data breaches, and has reviewed claims data from other settlements, the relief provided by this Settlement is an outstanding result for the Class. (Federman Decl., ¶ 8).

Moreover, the proposed Settlement creates a non-reversionary common fund that does not provide any preferential treatment to the named Plaintiffs or any segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Settlement Class Members are eligible to recover damages for any injuries caused by the Data Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Settlement Class Representatives. The Tenth Circuit has held that courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the

case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). A service award to Plaintiffs is appropriate here given their efforts and participation and does not constitute preferential treatment. *See McPherson v. American Bank Systems*, No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) (ECF No. 73) (approving service award in data breach class action of $1,500 per representative plaintiff).

> **v.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective.**

As explained above, Class Members are eligible to make a claim for Out-of-Pocket Losses, Lost Time, Credit Monitoring, or an Alternative Cash Payment. The claims may be prorated, if necessary. (SA, ¶ 66). The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. (*Id.* ¶ 78). In the event funds remain in the Settlement Fund after all approved claims are paid, Settlement Class Members who have submitted a valid claim will be eligible to receive an additional residual payment up to $95.00. (*Id.* ¶ 33).

Thus, the only difference in treatment among Class Members is that those who incurred and submit Out of Pocket Loss and Lost Time Claims will—appropriately and equitably—receive payments in proportion to the amount of their out-of-pocket losses,

which must be supported with documentation. All Class Members who submit valid Alternative Cash Payment Claims will receive the same payment. The 90-day claim period will be sufficiently long to enable all eligible Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective.

###    vi.    Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable.

Class Counsel will request no more than 30.0% of the Settlement Fund in attorneys' fees, and no more than $35,000 in costs and expenses (both requests are subject to Court approval). (*Id.* ¶ 93). This request is well within the typical range approved in the Tenth Circuit and elsewhere and poses no impediment to preliminary approval. *See McPherson v. American Bank Systems*, No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) (ECF No. 73) (Honorable Judge Charles B. Goodwin awarded thirty percent of the common fund in attorney's fees in a similar data breach case); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (finding that attorney's fees equal to one-fourth to one-third of a settlement are "well within the range of reasonable and permissible fees and costs awards in class action litigation."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% and 30% of the fund"); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in 450 studied settlements was 29%).

For these reasons and based on Class Counsel's experience in similar class litigation, Class Counsel is of the opinion that the settlement is fair, adequate, and reasonable, and should be approved by the Court.

## V.    THE COURT SHOULD FIND IT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS.

Rule 23(e) states that before authorizing notice, a Court should determine that it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g.*, *Harris*, 2019 WL 5846917 at *2. Here, the Court should find that it is likely to be able to certify this Settlement Class. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *11–14 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F. 3d 1247, 2021 WL 2250845, at *16–19 (11th Cir. 2021); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 307–16 (N.D. Cal. 2018); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *2–3 (N.D. Ohio Aug. 12, 2019).

### A.    Rule 23(a) Requirements Are Satisfied

***Numerosity:*** Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." In the Tenth Circuit, there is "no set formula" for determining whether numerosity is met, but district courts have "wide latitude in making this determination." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citations and quotation marks omitted). Here, the proposed class consists of

approximately 271,303 individuals. Joinder of so many individual plaintiffs is plainly impracticable, and the numerosity requirement is met here. *See, e.g.*, *In re Thornburg Mortg., Inc. Secs. Litig.*, 912 F. Supp. 2d 1178, 1233–34 (D. N.M. 2012) (finding class size in the "thousands" demonstrated joinder was impracticable).

*Commonality:* Rule 23(a)(2) requires "questions of law or fact common to the class." The proponents of certification must identify a common contention "'of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In this case, all members of the proposed class assert that their PII was compromised as a result of the Data Security Incident. Thus, their claims will involve numerous common questions of law and fact that will be resolved in the same way for all class members, such as whether Avem owed Plaintiffs and Class Members a duty to handle PII with reasonable care, and whether Avem's data security practices were inadequate to the point of breaching that duty. *See, e.g.*, *Naylor Farms*, 923 F.3d at 789 n. 10 (explaining that whether  a defendant breached a duty allegedly owed to all class members is a common question). Therefore, the commonality requirement is met.

*Typicality*: Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The interests and claims of named plaintiffs and class members "need not be identical," provided they are "based on the same legal or remedial theory." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th

Cir. 2010). The typicality requirement is satisfied where the interests of named plaintiffs and class members are not significantly antagonistic to one another, and where the harm or risk of harm faced by the named plaintiffs and class members stem from the same alleged conduct on the part of the defendant. *See id.* at 1199. Here, the claims of Plaintiffs and Class Members are the same and there are no significant differences among them. Plaintiffs and all Class Members allege their PII was exposed in the same Data Security Incident due to Avem's deficient data security practices. As such, typicality is satisfied.

*Adequacy of Representation*: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In assessing the adequacy requirement, courts look to answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interests with other class members [;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks*, 314 F.3d 1187–88 (citations and quotation marks omitted). Plaintiffs do not have any interests antagonistic to other class members and have retained qualified and experienced Counsel.   (Federman Decl., ¶ 10).  Further, as stated above, Plaintiffs and their counsel have been vigorously representing Class Members, and their diligence resulted in an early settlement that will deliver meaningful relief to Class Members. Accordingly, the adequacy requirement is met.

## B.  The Requirements of Rule 23(b)(3) are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the

controversy." Here, the predominance and superiority requirements are met.

***Predominance:*** "[T]he predominance inquiry 'asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Naylor Farms*, 923 F.3d at 789 (quoting *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Newberg on Class Actions* § 4:49)). "Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016)). The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members. "The focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *Equifax*, 2020 WL 256132 at *13 (quoting *Anthem*, 327 F.R.D. at 312). The only potentially individualized issue here is damages, which does not defeat predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** The superiority inquiry requires courts to consider class members' interest in individually controlling the litigation, the extent and nature of any litigation already begun by class members, and the desirability or undesirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C). All these factors weigh

in favor of finding the superiority requirement is met in the case at bar. For most of the 271,303 class members, individual damages are likely to be too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that makes litigation costly. *See Anthem*, 327 F.R.D. at 315–16. Litigating the claims of hundreds of thousands of class members—which would require presentation of the same evidence and expert opinions many times over—would be manifestly inefficient here.  Because class treatment is superior to individual litigation, superiority is satisfied.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND SETTLEMENT ADMINISTRATOR.

Rule 23(c)(2)(B) requires that for any proposed settlement under Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Permissible means of notice include "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) Likewise, Due process requires class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar."). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert.*

*denied*, 423 U.S. 864 (1975).

The Parties propose notifying Class Members individually and directly via U.S. Mail. Within seven days after the entry of the Preliminary Approval Order Avem will provide the Settlement Class List to the Settlement Administrator which will include physical addresses for the Settlement Class Members. (SA, ¶ 72(a)). Prior to disseminating Notice to the members of the Settlement Class, the Settlement Administrator will perform a National Change of Address Search on the physical addresses on the Settlement Class List (*Id.*).

Within thirty (30) days after the date of mailing/emailing of the Postcard Notice to the Settlement Class Members, the Settlement Administrator will determine if any Notice to Settlement Class Members was retuned and/or undeliverable ("Undeliverable Notice List"). (*Id.* ¶ 72(b)). Within forty (40) days of mailing of the Postcard Notice, the Settlement Administrator will perform additional levels of skip tracing on the Undeliverable Notice List to attempt to identify an alternative physical address for the Settlement Class Members on the Undeliverable Notice List and will re-mail the Postcard Notice to the Settlement Class Members to the extent an alternative physical address is identified through Settlement Administrator's efforts. (*Id.* ¶ 74)). Additionally, a reminder notice may be provided to all Settlement Class Members who have not submitted a claim thirty (30) days prior to the Claims Deadline. (*Id.* ¶ 72(e)).

The notice materials are plain and easy to understand. The notices include, *inter alia*, a description of the litigation, the essential terms of the Settlement, the deadline to submit a claim, and information regarding the Settlement Class Member's rights to opt

out or object. (*Id.* at Exs. 1, 3–4). Thus, the notice program satisfies the requirements of due process and Rule 23 and should be approved.

The Court should also approve Simpluris to serve as the settlement administrator. Simpluris is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. The parties selected Simpluris after considering bids from multiple administration firms and believe that Simpluris will be able to meet the obligations imposed on the settlement administrator under the settlement for a reasonable cost. (Federman Decl. ¶ 7).

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant their motion and enter the proposed order submitted by the Parties.

Dated: August 18, 2023                          Respectfully submitted,

                                                */s/: William B. Federman*
                                                William B. Federman
                                                **FEDERMAN & SHERWOOD**
                                                10205 N. Pennsylvania Ave.
                                                Oklahoma City, OK 73120
                                                Telephone: (405) 235-1560
                                                wbf@federmanlaw.com

## CERTIFICATE OF SERVICE

This is to certify that on August 18, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                                */s/: William B. Federman*
                                                William B. Federman