# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL BINGAMAN, WILLIAM SWIGERT, SHANE WILSON, and MARIA RUSKIEWICZ, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br>and<br><br>ROSALIE DUPUS, individually and on behalf of all similarly situated persons,<br><br>Consolidated Plaintiff,<br>v.<br><br>AVEM HEALTH PARTNERS, INC.,<br><br>Defendant. | ) ) ) Case No. CIV-23-130-SM ) ) ) ) Consolidated with: ) Case No. CIV-23-134-SLP ) ) ) ) ) ) ) ) ) ) ) ) ) |

## ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVING NOTICE PROGRAM

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Docs. 52, 53. Plaintiffs Samuel Bingaman, William Swigert, Shane Wilson, Maria Ruskiewicz (collectively, Plaintiffs), filed this lawsuit against Defendant Avem Health Partners, Inc., alleging damages resulting from a May 14, 2022 data security breach.[1] On August 17, 2023, the parties executed a Settlement Agreement and Release,

---

[1]    Capitalized terms not otherwise defined in this Order will have the meaning ascribed to them in the Settlement Agreement.

Doc. 54, Att. 1. The Settlement Agreement, together with the documents it references and its exhibits, sets forth the terms for the proposed Settlement of the litigation. Plaintiffs now present the Settlement to the Court for preliminary approval under Fed. R. Civ. P. 23.

The Court has reviewed the Motion for Preliminary Approval, the record, and the Settlement Agreement, together with its exhibits. Upon consideration, the Motion for Preliminary Approval is GRANTED.

## I.    Background.

Avem provides financial, technology, management, and capital solutions to hospitals in rural markets. Doc. 38, at 7. As part of its ordinary business, it collects, obtains, and is entrusted with the personally identifiable information (PII) and protected health information (PHI) of Plaintiffs and Settlement Class Members. *Id.* at 6. On May 16, 2022, Avem learned of a data security incident that may have caused the unauthorized access of Plaintiffs' and the Class's PII/PHI (approximately 271,303 individuals). *Id.* at 8. The types of information potentially exposed included names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnosis and treatment information. *Id.* Avem mailed notice of the data security incident to Plaintiffs and the Settlement Class on December 12, 2022. *Id.* at 8-9.

## II.    Preliminary approval of class action settlement.

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2).

 "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011). A court should preliminarily approve a proposed settlement of a class action where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted). Although the standards for preliminary

approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.

District courts have broad discretion when deciding whether to certify a putative class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and often a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350-51.

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). In the typical case in which the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968). Here, Plaintiffs move for certification for the purposes of settlement and Avem does not oppose the motion. Doc. 52.

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A class action may be sustained if these requirements are satisfied and the class meets the requirements of one of the categories of Rule 23(b). Fed. R. Civ. P. 23(b).

Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). Doc. 53, at 27. Under that provision, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).[2] If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the settlement agreement is

---

[2]      To certify a settlement class, the Court need not find out whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"fair, reasonable, and adequate" under Rule 23(e).[3] Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If Plaintiffs meet the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine whether:

> it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## III.  Analysis of proposed Settlement Agreement.

### A.    Settlement Agreement.

On May 18, 2023, the parties participated in a full-day mediation session before Bennett G. Picker, a well-regarded private mediator, with the benefit of informal discovery. Doc. 54, Att. 1, at 2-3. Having made significant progress during the mediation, the parties continued negotiations with Mr. Picker's

---

[3]    The fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but "function[s] as an additional requirement." *Amchem*, 521 U.S. at 621.

assistance and the parties soon reached a comprehensive Settlement Agreement. *Id.*

The motion for preliminary approval seeks certification of the following class:

> All individuals who were sent notification by Avem that their PII/PHI (names, dates of birth, Social Security numbers, driver's license numbers, health insurance information, and/or diagnoses and treatment information) was or may have been compromised in the Data Security Incident.

Doc. 54, Att. 1, ¶ 39. Excluded from the Settlement Class are: (i) the Judge(s) presiding over this Action, and members of his/her/their direct family(ies); and (ii) Settlement Class Members who submit a valid Request for Exclusion before the Opt-Out Deadline. Doc. 53, at 11 n.2.

The Settlement Agreement provides for a $1,450,000 non-reversionary settlement fund. Doc. 54, Att. 1, ¶¶ 42, 46-47. The Settlement Fund will be used to pay: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Out-of-Pocket Losses; (iv) Approved Claim(s) for Lost Time; (v) Approved Claims for Credit Monitoring and Identity Theft Protection Services; (vi) Approved Claims for Alternative Cash Payments; (vii) Service Awards Payments approved by the Court, (viii) Attorneys' Fee Award and Costs approved by the Court; and (ix) Residual Cash Payments. *Id.* ¶ 50. Following payment of the above expenses, any amount

remaining in the Net Settlement Fund will be paid to the Non-Profit Residual Recipient. *Id.*

Settlement Class Members may seek (1) a one-time alternative cash payment of $100, or (2) can seek reimbursement up to $7,000. *Id.* ¶¶ 58, 52. To receive reimbursement for Documented Out-of-Pocket Losses for up to $7,000, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. *Id.* ¶ 52.

Reimbursement claims can seek reimbursement of Lost Time for up to five hours at $25.00 per hour. This Lost Time reimbursement requires Settlement Class Members to provide an attestation that the time spent was reasonably related to mitigating the effects of the Data Security Incident. *Id.* ¶ 54. A claim for Lost Time may be combined with a claim for reimbursement for Documented Out-of-Pocket Losses, but a Settlement Class Member cannot receive more than the $7,000.00 individual cap. *Id.* ¶ 54. Every Settlement Class Member is eligible to enroll in 36 months free credit monitoring and identity theft protection services provided by Sontiq. *Id.* ¶ 57.

The Settlement Agreement also permits class counsel to move for reasonable attorney's fees in an amount not to exceed 30% of the Settlement Fund and reasonable costs and expenses not to exceed $35,000. *Id.* ¶ 93.

The parties have agreed to use Simpluris as the notice provider and claims administrator in this case. *Id.* ¶ 38. The motion proposed direct and individual notice, in the form of summary postcards, to be provided to Settlement Class Members via United States Postal Service first class mail. *Id.* ¶ 73. The claim administrator will also establish a settlement website with pertinent links to relevant documents and posting notice. *Id.* ¶ 44. The parties propose that class members who seek to exclude themselves from the settlement agreement or object to the fairness, reasonableness, or adequacy of the agreement may do so until 60 days after the entry of this Order. *Id.* ¶¶ 27, 26.

**B.    Rule 23(a).**

**1.    Numerosity.**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Some courts have held that numerosity may be presumed after a certain number, though the Tenth Circuit has never adopted a minimum presumption of numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) ("[T]here is no set formula" and upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification); *see, e.g., Rex v. Owens ex rel. St. of Okla.*, 585 F.2d 432, 436 (10th

Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."),

Here, the proposed settlement class includes approximately 271,303 people whose PII/PHI was possibly compromised by the data security breach. Doc. 38, at 8. The Court concludes that joinder of at least 271,303 people would be impracticable and that the numerosity requirement is met.

## 2. Commonality.

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist. *Devaughn*, 594 F.3d at 1195. Commonality requires that the plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Even a single common question will satisfy commonality. *Dukes*, 564 U.S. at 359.

Here, there are many common questions of law and fact. The parties explain that common issues include whether Avem owed Class Members a duty to handle PII/PHI with reasonable care and whether Avem's data security systems before and during the breach were inadequate to the point of

breaching that duty. Doc. 53, at 26; *Naylor Farms v. Chapparal Energy, LLC*, 923 F.3d 779, 790 n.10 (10th Cir. 2019) ("[T]he district court correctly concluded that whether Chaparral breached [a duty] is a common question"). The relief here will not require an examination of unique circumstances, apart from the standard claims administrator determination. The Court finds that the proposed class satisfies the commonality requirement.

### 3. Typicality.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1198-99. Still "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted).

The parties explain that the representative plaintiffs' claims and the proposed class members' claims all stem from the same event, so their claims are the same and there are no significant differences among them. Doc. 53, at 27. The representative plaintiffs do not appear to be subject to any unique defenses. *See Marcus*, 687 F.3d at 599. The Court thus agrees that the representative Plaintiffs bring claims that are typical of the proposed class.

### 4. Adequacy of the representation.

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted). As a result, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26. The Court has found that the representative plaintiffs bring claims typical of the proposed class. *Supra* § III.B.3.

12

The Court considers two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

As for the first adequacy factor, the Court finds that the interests of the class are fairly and adequately protected by the representative plaintiffs and their counsel. Plaintiffs state that they "do not have any interests antagonistic to other class members and have retained qualified and experienced Counsel." Doc. 53, at 27. Nothing in the record shows any conflict of interest between the representative plaintiffs or counsel and the rest of the class. Moreover, the settlement agreement does not raise any obvious concerns about interclass conflicts. See *Amchem*, 521 U.S. at 611-12 (noting interclass conflict between the exposure-only asbestos plaintiffs and those already afflicted with asbestos related disease). Class members will be able to challenge this issue at the fairness hearing if they believe otherwise.

For the second adequacy factor, Plaintiffs submit they have vigorously prosecuted this case through qualified and experienced counsel. Doc. 53, at 27. There are no questions about the competency of the proposed class counsel or their ability to prosecute this action and, if any such questions do arise, they will be considered at the fairness hearing. Thus, at this preliminary stage, because the representative plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the representative plaintiffs have satisfied Rule 23(a)(4)'s requirements. *See Rutter*, 314 F.3d at 1188.

## C.    Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the

claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1. Predominance.

The predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are cohesive enough to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.

Plaintiffs argue that common questions of law and fact predominate over any questions affecting only individual members. And they argue that the only potentially individual issue here is damages, which does not defeat predominance. Doc. 53, at 28. Because the common questions of law and fact turn on the conduct of Avem, these questions predominate as they are unaffected by the particularized conduct of individual class members. Other courts also have similarly found that common issues in data breach cases predominate over individualized issues. *See Bowdle v. King's Seafood Co., LLC*,

15

2022 WL 19235264, at *4 (C.D. Cal. Oct. 19, 2022); *In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626, at *5 (E.D. Va. Sept. 13, 2022); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020), *aff'd,* 2022 WL 2304236 (9th Cir. June 27, 2022); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018). The Court finds that common issues of law and fact predominate in this case.

### 2. Superiority.

The Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively. Settlement avoids duplicative litigation, saving both class members and Avem significant time and legal costs to adjudicate common legal and factual issues. And settlement is appropriate because individual recovery for these claims is likely to be too small to provide an incentive for individual class members to adjudicate individual claims. Given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons. Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.

Because the 271,303 class members will receive the same type of relief, and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions

predominate over individual questions and the settlement class is a superior method of resolving this litigation. *See Amchem*, 521 U.S. at 623.

### D.    Rule 23(e) Factors.

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.

Based on the information available to the Court, the Court notes the following, which supports preliminary approval. The proposed settlement agreement stems from significant negotiations and discussions between the parties. As noted, after informal discovery, the parties participated in an all-day mediation session before an experienced mediator. Doc. 54, Att. 1, at 2-3. Although the mediation session did not result in an immediate settlement, the parties continued to engage in negotiations, which ultimately led to the settlement agreement. *Id.* There is no evidence that the settlement agreement resulted from a collusive agreement between the parties. The Court therefore finds that the negotiations were conducted fairly and honestly.

As to the second factor, the Court concludes the proposed Settlement was agreed to only after Class Counsel conducted legal research and discovery related to the strengths and weaknesses of Plaintiffs' and the Settlement Class's claims. *Id.* at 3.

As to the third factor, the Court finds this factor favors the proposed settlement. "Courts presiding over similar cases have recognized that the 'legal issues involved in data breach litigation are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues.'" *In re the Home Depot Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (citation and alterations omitted). Given the uncertainty of class members' likelihood of success on the merits and

the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex data breach litigation. *See* Doc. 54, Att. 1, at 3. Thus, the Court finds this factor supports granting preliminary approval.

As to the fourth factor, the parties believe the Settlement Agreement is fair and reasonable. Plaintiffs' counsel has extensive experience in data breach litigation and states that he has negotiated what he believes to be a fair, adequate, and reasonable settlement. *Id.* Certifying the Settlement Class will allow the Court to determine whether there are other members of the class who challenge the fairness of the parties' proposed settlement agreement. Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors. The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed settlement agreement.

In sum, the Court finds all prerequisites and requirements of Fed. R. Civ. P. 23(a)-(b) are satisfied to certify a class for settlement reasons, subject to the Court's final consideration at the Final Fairness Hearing.

## IV.    FINDINGS

### A.    Preliminary approval.

As a result, the Court appoints Plaintiffs as Settlement Class Representatives. The Court also appoints Federman and Sherwood as Settlement Class Counsel under Federal Rule of Civil Procedure 23(a)(4), finding that Class Counsel is well-qualified and experienced. The Court preliminarily approves the Settlement Agreement in its entirety subject to the Final Approval Hearing.

### B.    Notice and administration.

The Court appoints Simpluris as Settlement Administrator.

The Court finds that the Notice and all forms of Notice to the Class as set forth in the Settlement Agreement and corresponding exhibits ("Notice Program") is reasonably calculated to, under the circumstances, apprise the members of the Class of the pendency of this action, the certification of the Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program aligns with the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

The Court approves the Notice Program, including the proposed Notice documents attached as exhibits to the Settlement Agreement. The Court also approves the plan for claims administration, including the Claim Forms. The

Parties may, by agreement, revise the Notice and Claims Forms in ways that are not material, or in ways appropriate to update those documents for purposes of accuracy or formatting.

Within seven days of entry of this Order, Avem must provide the Settlement Administrator with a list of the names and the current or last known addresses and email addresses of the Class Members and a list of returned mailings for the members of the Settlement Class to whom the original notice of the Data Security Incident was returned and/or undeliverable.

The Parties, through their counsel, will coordinate with the Settlement Administrator to provide Notice pursuant to the Notice Program as follows:

1.      Within thirty days of the entry of the Preliminary Approval Order, the Settlement Administrator shall send Notice to the Settlement Class Members. *See* Doc. 54, Att. 4.

2.      Class counsel may request, with the consent and approval of any specific reminder language from Defendant, that the Settlement Administrator mail reminder notices to Settlement Class members who have not yet submitted a Postcard Claim Form and/or Claim Form, with such reminder notices to be mailed, if at all, thirty (30) days prior to the Claims Deadline.

3.    A copy of the Settlement Long Form Notice will be made available to the Class Members on the Settlement website to be maintained by the Settlement Administrator. The website shall be maintained for no less than sixty days after all Settlement Payments have been distributed. The website will include copies of the Complaint, Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, Long-Form Notice, Claim Form, Motion for Class Counsel's attorneys' fees, expenses, Motion for Final Approval, and Order and Final Judgment. The website will also provide applicable Settlement deadlines and answers to frequently asked questions.

4.    The Settlement Administrator will provide a phone line for additional information or answers to frequently asked questions. In addition, the Settlement Administrator will provide an option to speak with a live customer service representative.

Class Members who wish to receive benefits under the Settlement Agreement must complete and submit a valid Claim Form. The deadline to submit a Claim Form is ninety days after the initial mailing of the Notice.

### C.    Exclusion.

Class Members who wish to exclude themselves from the Class for purposes of this Settlement can do so by submitting an opt-out request to the

Settlement Administrator before the opt-out deadline, which will be sixty days from the date the Notice is mailed by the Settlement Administrator. The opt-out request must comply with the exclusion procedures set forth in the Settlement Agreement. Each Class Member desiring to exclude him or herself from the Settlement Class must send written notice of such intent to the designated address set forth in the Settlement Postcard Notice and/or Settlement Electronic Notice. The written notice must clearly show the intent to opt-out from the Settlement Class and must include: (i) the name of the Action ("*Bingaman et al., v. Avem Health Partners, Inc.*, Case No. 1:23-cv-0130-SM"); (ii) the full name, address, and personal signature of the person requesting to be excluded; (iii) the words "*Request for Exclusion*" at the top of the document or a comparable statement that the individual does not wish to participate in the Settlement at the top of the document. A request for exclusion may not request exclusion of more than one member of the Class. Mass opt-outs are not permitted.

Any member of the Class who timely requests exclusion consistent with these procedures may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement. Any member of the Class who fails to submit a valid and timely request for exclusion will be bound by all terms of the Settlement Agreement, Release, and the Final Judgment.

### D.    Objections.

Any member of the Class who has not timely filed an opt-out request can object to the granting of final approval to the settlement. Any Class Member can object on their own or may do so through separate counsel at their own expense. Any objection must be mailed to the Settlement Administrator no later than sixty days from the date the Notice is mailed by the Settlement Administrator.

Any written objection to the Settlement must include: (i) the name of the Action ("*Bingaman et al., v. Avem Health Partners, Inc.*, Case No. 1:23-cv-0130-SM"); (ii) the Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) copies of any documents supporting the objection; (vi) the identity of any attorneys representing the objector; (vii) a statement regarding whether the Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (viii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (ix) the signature of the Class Member or the Class Member's attorney.

Any member of the Class who fails to file and serve a timely written objection in compliance with the requirements of this order and the Settlement

Agreement shall be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.

### E.    Fairness hearing.

A fairness hearing ("Final Approval Hearing" or "Fairness Hearing") will be held before this Court on **Friday, May 10, 2024, at 10:00 a.m.**, at the United States District Court for the Western District of Oklahoma, located at 200 NW 4th Street, Oklahoma City, Oklahoma 73102, or by videoconference or telephonic means, to consider: (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a final judgment should be entered; (c) whether to award payment of attorneys' fees, costs, and expenses to Class Counsel and in what amount; and (d) whether to award payment of a service award to the Settlement Class Representative and in what amount. The Court may adjourn the Fairness Hearing without further notice to Class Members. If the Court chooses to hold the Fairness Hearing by videoconference or telephonic means, notice will be posted on the Settlement Website.

### F.    Miscellaneous provisions.

To protect its jurisdiction to consider the fairness of the Settlement Agreement and to enter a final order and judgment having binding effect on

all Class Members, the Court enjoins all members of the Class, and anyone who acts or purports to act on their behalf, from pursuing all other proceedings in any state or federal court that seeks to address rights or claims of any Released Party or Class Member relating to, or arising out of, any of the Released Claims. This prohibition will be effective upon notice to members of the class.

Class Members shall be bound by all determinations and judgments concerning the Action and/or Settlement Agreement, whether favorable or unfavorable.

The Court stays and suspends all case deadlines until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

Counsel for the parties may use all reasonable procedures in connection with the administration of the settlement that are not materially inconsistent with either this Order or the terms of the Settlement Agreement.

If this Settlement Agreement is terminated under its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the order certifying the Settlement Class to effectuate the Settlement, and all preliminary and/or final findings regarding that class certification order, shall be automatically vacated upon notice of the same to the Court, the Action shall proceed as

though the Class had never been certified under this Settlement Agreement and such findings had never been made, and the Action will return to the procedural posture in effect before entry of this Order. Neither party nor counsel shall refer to or invoke the vacated findings and/or order relating to class settlement or Rule 23 of the Federal Rules of Civil Procedure if this Settlement Agreement is not consummated and the Action is later litigated and contested by Defendant under Rule 23 of the Federal Rules of Civil Procedure.

The Settlement Agreement is not a concession or admission, and shall not be used against Avem or any of the Released Parties as an admission or indication with respect to any claim of any fault or omission by Avem or any of the Released Parties. Whether or not the Settlement Agreement is finally approved, neither the Settlement Agreement, nor any document, statement, proceeding, or conduct related to the Settlement Agreement, nor any reports or accounts of them, will in any event be:

1. Construed as, offered, or admitted in evidence as, received as or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication, or admission by Avem or any of the Released Parties of any liability, fault, wrongdoing, omission, concession, or damage; or

2.     Disclosed, referred to, or offered or received in evidence against any of the Released Parties in any further proceeding in the Action, or in any other civil, or administrative action or proceeding, except for purposes of settling the Action pursuant to the Settlement Agreement and by the Parties for purposes of enforcing the Settlement Agreement.

**G.    Summary of Deadlines.**

The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

**Notice Completion Deadline:** 30 days after Preliminary Approval

**Motion for Final Approval:** at least 14 days before Final Approval Hearing

**Motion for Service Awards, Attorneys' Fees and Costs:** at least 14 days before Final Approval Hearing

**Opt-Out Deadline:** 60 days after the Notice Deadline

**Objection Deadline:** 60 days after the Notice Deadline

**Claims Deadline:** 90 days after the Notice Deadline

**Final Approval Hearing:** at least 100 days after Preliminary Approval

IT IS SO ORDERED this 26th day of January, 2024.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE