**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SAMUEL BINGAMAN, WILLIAM SWIGERT, SHANE WILSON, and MARIA RUSKIEWICZ, individually and on behalf of all similarly situated persons, | ) ) ) ) ) ) | Case No. CIV-23-130-SLP<br><br>Consolidated with:<br>Case No. CIV-23-134-SLP |
| Plaintiffs, | ) ) | |
| and | ) ) | Magistrate Judge Suzanne Mitchell |
| ROSALIE DUPUS, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Consolidated Plaintiff, | ) ) | |
| v. | ) ) | |
| AVEM HEALTH PARTNERS, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

III.    SUMMARY OF SETTLEMENT TERMS................................................. 4

    A.    CLASS DEFINITION .................................................................... 4

    B.    SETTLEMENT BENEFITS............................................................ 5

      1.  Documented Out-of-Pocket Losses ................................................ 5

      2.  Lost Time........................................................................................ 6

      3.  Credit Monitoring .......................................................................... 6

      4.  Alternative Cash Payment .............................................................. 6

    C.    RELEASED CLAIMS....................................................................... 7

    D.    NOTICE AND ADMINISTRATION ............................................... 7

    E.    CLAIMS, OPT OUTS, AND OBJECTIONS ................................... 8

    F.    SERVICE AWARDS, ATTORNEYS' FEES, COSTS, AND EXPENSES..... 9

IV.    ARGUMENT .................................................................................................. 9

    A.    The Settlement is Fair, Reasonable and Adequate, and Warrants Final

      Approval. ................................................................................................. 9

      1.  Rule 23(e)(2)(A): The Proposed Class is Adequately Represented............ 10

      2.  Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

        ...................................................................................................... 11

      3.  Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair,

        Reasonable, and Adequate. ........................................................ 12

     i.    Jones Factor 1:The Settlement was Fairly and Honestly Negotiated. 12

    ii.    Rule 23(e)(2)(C)(i) and *Jones* Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt. ................................................................................................... 13

   iii.   *Jones* Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation. ......................................................................................... 14

   iv.   *Jones* Factor 4: The Parties and their Counsel Agree that the Settlement is Fair and Reasonable. ...................................................................... 14

    v.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective. ............................................. 16

   vi.   Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable. ................................................................................................... 17

V.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................................................................................................................18

   A.   The Rule 23(a) Requirements Are Satisfied................................................. 18

   B.   The Requirements of Rule 23(b)(3) Are Satisfied........................................ 20

VI.  THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS ......................... 22

VII. CONCLUSION ....................................................................................................... 24

## **TABLE OF AUTHORITIES**

**<u>Cases</u>**

*Amchem Prod., Inc. v. Windsor*,

    521 U.S. 591 (1997)...................................................................................... 18

*Brown v. Electrolux Home Products, Inc.*,

    817 F.3d 1225 (11th Cir. 2016) .................................................................... 21

*Camden I Condominium Ass'n, Inc. v. Dunkle*,

    946 F.2d 768 (11th Cir. 1991) ...................................................................... 18

*CGC Holding Co., LLC v. Broad and Cassel*,

    773 F.3d 1076 (10th Cir. 2014) .................................................................... 21

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

    888 F.3d 455 (10th Cir. 2017) ...................................................................... 16

*DG ex rel. Stricklin v. Devaughn*,

    594 F.3d 1188 (10th Cir. 2010) .............................................................. 19, 20

*Dickey's Barbeque Restaurants, Inc.*,

    No. 20-cv-3424 (N.D. Tex.) .......................................................................... 14

*Gordon v. Chipotle Mexican Grill, Inc.*,

    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .............. 13

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................... 14

*Harris v. Chevron U.S.A., Inc.*,

    No. CIV-15- 0094-PRW, 2019 WL 5846917 (W.D. Ok. July 29, 2019)...................... 18

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................21, 22

*In re Crocs, Inc. Sec. Litig.*,

    306 F.R.D. 672 (D. Colo. 2014) ...................................................................................... 12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

    No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...................... 21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013) ......................................................................................... 14

*In re Herff Jones Data Breach Litigation*,

    No. 21-cv-1329 (S.D. Ind.) ............................................................................................. 14

*In re Molycorp, Inc. Sec. Litig.*,

    No. 12-cv-292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................ 12

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,

    997 F.3d 1077 (10th Cir. 2021) ..................................................................................... 18

*Jones v. Nuclear Pharmacy, Inc.*,

    741 F.2d 322 (10th Cir. 1984) ....................................................................................... 10

*Lucas v. Kmart Corp.*,

    234 F.R.D. 688 (D. Colo. 2006) ..................................................................................... 12

*Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*,

    No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............... 16

*McPherson v. American Bank Systems*,

    No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) ................................................. 16, 17

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,

  923 F.3d 779 (10th Cir. 2019) .................................................................... 19, 21

*Pliego v. Los Arcos Mexican Rest., Inc.*,

  313 F.R.D. 117 (D. Colo. 2016) .................................................................... 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

  314 F.3d 1180 (10th Cir. 2002) .................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,

  136 S. Ct. 1036 (2016) .................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,

  564 U.S. 338 (2011) .................................................................... 19

*Winstead v. ComplyRight, Inc.*,

  No. 1:18-cv-04990 (N.D. Ill.) .................................................................... 14

## Rules

Fed. R. Civ. P. 23 ....................................................................passim

## Treatises

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ....................................................... 13

*Manual For Complex Litigation*, § 21.632 (4th ed. 2014) ................................................ 18

*Newberg on Class Actions*, § 4:49 .................................................................... 21

Plaintiffs Samuel Bingaman, William Swigert, Shane Wilson, Rosalie Dupus, and Maria Ruskiewicz (collectively "Plaintiffs"), individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), submit this Memorandum of Law in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently herewith.[1]

## I.    INTRODUCTION

On January 26, 2024, this Court preliminarily approved a settlement between Plaintiffs, on one hand, and Avem Health Partners, Inc. ("Avem" or "Defendant"), on the other hand. *See* ECF No. 57. The Settlement provides a very favorable result for the Settlement Class, including substantial monetary benefits, identity theft protection, and insurance.

The Settlement provides a generous non-reversionary Settlement Fund of $1,450,000.00 to pay for the costs and expenses of this settlement including the following substantial benefits for Settlement Class Members: (i) reimbursement up to $7,000.00 for Documented Out-Of-Pocket Losses; (ii) reimbursement of Lost Time at a rate of $25.00 per hour (a maximum of 5 hours); and (iii) 3 years of credit monitoring and identity theft protection services. *See* SA, ¶¶ 52, 54, 57. A claim for Lost Time may be combined with a claim for reimbursement for Documented Out-of-Pocket Losses, but a Settlement Class

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (ECF No. 54-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ __."

Member will not be eligible to receive more than the $7,000.00—the individual cap. *Id.* ¶ 54. Additionally, and in lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses, reimbursement for Lost Time, and/or Credit Monitoring and Identity Theft Protection Services, all Settlement Class Members may elect to submit a claim for a one-time Alternative Cash Payment of up to $100.00. *Id.* ¶ 58. This is in addition to the meaningful remediation measures Defendant is undertaking at its own expense, completely separate and apart from the $1,450,000.00 made available to the Class. *See id.* ¶ 69.

The Settlement involved a comprehensive notice program and user-friendly claims process, which have been, and are being, implemented by the Settlement Administrator. *See* Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Federman Decl."), ¶¶ 8–14 (filed contemporaneously herewith); *see also* Decl. of Christopher Leung on Notice and Settlement Administration ("Simpluris Decl.") (attached as Ex. 1 to the Federman Decl.). The deadline to submit all claims is May 25, 2024. Simpluris Decl., ¶ 9. The Court-approved notice program provided for direct notice by mail and the creation of a Settlement Website. *Id.* ¶¶ 4, 6. The Settlement also garnered significant press coverage and was featured on at least two websites, Top Class Actions and The HIPAA Journal. *Id.* ¶ 5.

The deadline to file objections or to request exclusion expired on April 25, 2024. *Id.* ¶¶ 10–11. No objections and five (5) requests for exclusion were received. *Id.* ¶ 10. The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval.

In light of the valuable benefits conveyed to members of the Settlement Class, and the significant risks faced through continued litigation, the Settlement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Avem provides financial, technology, management, and capital solutions to hospitals in rural markets. *See* Am. Consolidated Class Action Compl. ("Compl.") ¶ 20, ECF No. 38. In the ordinary course of business, Avem collects, obtains, and is entrusted with the personally identifiable ("PII") and protected health information ("PHI") of Plaintiffs and Settlement Class Members. *Id.* ¶ 21. On May 16, 2022, Avem learned of a data security incident that may have resulted in the unauthorized access of Plaintiffs' and the Class's PII and PHI (the "Data Security Incident"). *Id.* ¶ 21. Defendant sent notice of the Data Security Incident via mail to Plaintiffs and the Settlement Class on or about December 12, 2022, informing them that their PII/PHI may be at risk. *Id.* ¶ 23.

Following notice of the Data Security Incident, four (4) class action lawsuits were filed against Avem in the District Court of Grady County, State of Oklahoma. These cases were subsequently removed and/or consolidated into this matter before the United States District Court for the Western District of Oklahoma, and William B. Federman of Federman & Sherwood was appointed Interim Class Counsel and Interim Liaison Class Counsel. *See* ECF No. 37.

This Settlement resulted from good faith, arm's-length settlement negotiations, as well as a full-day mediation session on May 18, 2023, with highly respected mediator, Bennet G. Picker. *See* Decl. of William B. Federman in Support of Plaintiffs' Mot. for

Preliminary Approval of Class Action Settlement ("Federman MPA Decl."), ¶ 4, ECF No. 54. Although the Parties did not resolve the case during the mediation session, significant progress was made. *Id.* After the conclusion of the mediation session, the Mediator provided a mediator's proposal to the Parties, which was considered by Plaintiffs and Defendant for approximately one week. *Id.* After further discussions with the Mediator, the Parties agreed to accept the proposal. *Id.* The Mediator's proposal resulted in an agreement to settle this matter in principle. *Id.*

In the weeks that followed the mediation, the Parties continued to negotiate the remaining terms of the Settlement and drafted a comprehensive Settlement Agreement with accompanying exhibits. *Id.* The Parties also solicited cost proposals from potential settlement administrators. *Id.* ¶ 7.

Plaintiffs moved thereafter for preliminary approval of the Settlement, which this Court granted on January 26, 2024. *See* ECF No. 57. As discussed in detail below, pursuant to the Preliminary Approval Order, notice was sent to the Settlement Class and Settlement Class members have proceeded to submit claims. Plaintiffs now submit their unopposed Motion for Final Approval of the Settlement.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  CLASS DEFINITION

The Settlement Class includes approximately 271,303 individuals and is defined to include all persons "All individuals who were sent notification by Avem that their PII/PHI (names, dates of birth, Social Security numbers, driver's license numbers, health insurance

information, and/or diagnoses and treatment information) was or may have been compromised in the Data Security Incident." SA, ¶ 39.[2]

## B. SETTLEMENT BENEFITS

Defendant contributed $1,450,000.00 to a non-reversionary Settlement Fund for the benefit of Plaintiffs and the Class. *Id.* ¶¶ 42, 46–47. To administer these funds and implement the Settlement's terms, the Court appointed Simpluris as the "Settlement Administrator." *See* ECF No. 57. The Settlement Fund will be used to pay for: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Out-of-Pocket Losses; (iv) Approved Claim(s) for Lost Time; (v) Approved Claims for Credit Monitoring and Identity Theft Protection Services; (vi) Approved Claims for Alternative Cash Payments; (vii) Service Awards Payments approved by the Court, (viii) Attorneys' Fee Award and Costs approved by the Court; and (ix) Residual Cash Payments. SA, ¶ 50.

### 1. Documented Out-of-Pocket Losses

All Settlement Class Members may submit a claim for up to $7,000.00 for reimbursement of Documented Out-of-Pocket Losses. *Id.* ¶ 52. To receive reimbursement for Documented Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. *Id.*

---

[2] The Court preliminarily certified the Settlement Class. Nothing has changed since that Order was issued, and thus the Settlement Class should be finally certified.

### 2. Lost Time

Settlement Class Members may also submit a claim for reimbursement of Lost Time for up to five (5) hours at twenty-five dollars ($25.00) per hour. *Id.* ¶ 54. Settlement Class Members can receive reimbursement of Lost Time with an attestation that the time spent was reasonably related to mitigating the effects of the Data Security Incident. *Id.* A claim for Lost Time may be combined with a claim for reimbursement for Documented Out-of-Pocket Losses, but a Settlement Class Member will not be eligible to receive more than $7,000.00, the individual cap. *Id.*

### 3. Credit Monitoring

Further, all Settlement Class Members are eligible to enroll in three (3) years of three-bureau Credit Monitoring and Identity Theft Protection Services provided by Sontiq, regardless of whether the Settlement Class Member submits a claim for reimbursement of Documented Out-of-Pocket Losses or Lost Time. *Id.* ¶ 57.

### 4. Alternative Cash Payment

Additionally, and in lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses, reimbursement for Lost Time, and/or Credit Monitoring and Identity Theft Protection Services, all Settlement Class Members may elect to submit a a one- time Alternative Cash Payment of up to $100.00. *Id.* ¶ 58.

### C. RELEASED CLAIMS

In exchange for the relief described above, Defendant and all "Released Parties" (as defined in SA, ¶ 30), will receive a full release of all known and unknown claims arising out of or related to the Data Incident.

### D. NOTICE AND ADMINISTRATION

Direct notice was sent was sent by Simpluris via USPS first-class mail on February 25, 2024. Simpluris Decl., ¶ 3. On February 1, 2024, Simpluris received one (1) file from Defense Counsel containing 271,303 records of potential class member names and mailing addresses. *Id.* Of the 271,303 records, there were 69,826 records with missing mailing address information. *Id.* After performing standard data hygiene and deduplication analysis, Simpluris identified 200,880 unique member records with valid mailing addresses. *Id.* Prior to mailing, Simpluris updated the mailing address information for all class members via the USPS National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS. *Id.* Additionally, all addresses were processed through the USPS Coding Accuracy Support System ("CASS") and Locatable Address Conversion System ("LACS") to ensure deliverability. *Id.*

On February 23, 2024, Simpluris disseminated Summary Notices via U.S. First Class Mail to the 200,880 records with valid mailing addresses. *Id.* ¶ 4. A true and correct copy of the Summary Notice is attached as Exhibit A to the Simpluris Declaration. *Id.* at Ex. A. As of April 18, 2024, 53,398 Summary Notices were returned to Simpluris as undeliverable. *Id.* ¶ 4. Of the pieces returned, 37,621 included forwarding address

information or were updated with new addresses as a result of skip trace address research and the notices were promptly remailed to the updated addresses. *Id.* On April 5, 2024, Simpluris disseminated Reminder Summary Notices via U.S. First Class Mail to the 200,880 records with valid mailing addresses. *Id.* A true and correct copy of the Reminder Summary Notice is attached as Exhibit B to the Simpluris Declaration. *Id.* at Ex. B. As of April 18, 2024, 23,732 Reminder Summary Notices had been returned to Simpluris as undeliverable. *Id.* ¶ 4. Of the pieces returned, 533 included forwarding address information or were updated with new addresses as a result of skip trace address research and the notices were promptly remailed to the updated addresses. *Id.*

In addition to the direct notice provided to Settlement Class Members, the Settlement was featured on two websites, Top Class Actions and The HIPAA Journal, who published notice of the Settlement on March 20, 2024. *Id.* ¶ 5. Simpluris also set up a dedicated settlement website that was launched on February 5, 2024. *Id.* ¶ 6. As of April 18, 2024, there have been 16,404 page views and 5,490 unique visitors to the Settlement Website. *Id.* In addition, there was a P.O. Box and email address dedicated to the Settlement for Settlement Class members to direct questions to Simpluris. *Id.* ¶¶ 7–8. By all means, Settlement Class Members were well-informed of their options under the Settlement and the notice plan was successful.

### E. CLAIMS, OPT OUTS, AND OBJECTIONS

Class members had until April 25, 2024, to file an Opt Out to the Settlement. *Id.* ¶ 10. As of April 18, 2024, five (5) Opt Outs were received by Simpluris. *Id.* The names of

the individuals who requested to be excluded from this settlement are Derek Munzuris, Denise Pendley, Shawna R. Sershon, Robert L. Sershon, and Tanja Dufrane. *Id.*

### F.  SERVICE AWARDS, ATTORNEYS' FEES, COSTS, AND EXPENSES

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel filed a Motion for Award of Attorney's Fees, Reimbursement Of Litigation Expenses, and Service Awards to Plaintiffs concurrently herewith, requesting $435,000.00 in attorney's fees, $13,788.58 in expenses, as well as Service Awards of $1,500.00 for each of the Class Representatives ($7,500.00 in total). SA, ¶¶ 91, 93. These requests are contemplated by the Settlement Agreement and Class Counsel apprised the Court of these requests in their Motion for Preliminary Approval filed August 18, 2023. *See* ECF No. 53. This was also clearly delineated in the notice materials sent to the Settlement Class. *See* ECF Nos. 54-2, 54-4, 54-5.

### IV.   ARGUMENT

#### A.  The Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval.

Under Federal Rule of Civil Procedure ("Rule") 23(e)(2), in order to grant final approval of a class action settlement, the Court must first determine whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must also

consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

Additionally, the Tenth Circuit has identified four extra factors (partially overlapping with the Rule 23(e)(2) factors) to be considered in assessing whether a settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable" (the "*Jones* Factors"). *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

This Court made a preliminary finding on January 26, 2024 (ECF No. 57), that the Settlement preliminarily met the requirements above. Now, the Court should find that these pre-requisites have been satisfied for the reasons set forth below.

### 1. Rule 23(e)(2)(A): The Proposed Class is Adequately Represented.

This Court previously considered Class Counsel's qualifications when appointing William B. Federman as Interim Class Counsel and Interim Liaison Class Counsel and when preliminarily approving the Settlement. *See* ECF Nos. 37, 57. Class Counsel has extensive experience litigating complex and  class  actions and has demonstrated ample

success in litigating data security breach class actions. *See* Federman MPA Decl., ¶ 8, Ex. B. Class Counsel have adequately represented the class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from Avem regarding the incident, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. *Id*. ¶ 5.The extensive work done by Class Counsel to date provided Class Counsel with sufficient information to negotiate this Settlement. *Id*. ¶¶ 5–6.

The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. *Id*. ¶ 10. Their claims and interests align with those of the Settlement Class. *Id.*. Thus, this factor weighs in favor of granting final approval.

### 2. Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

"Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014)).

The Settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Bennett G. Picker. *See* Federman MPA Decl., ¶ 4; Federman Decl., ¶¶ 3, 7. As part of the mediation process, the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. *Id.* ¶¶ 4–5. The fact that the Settlement was achieved through well-informed and arm's-length neutrally supervised negotiations weighs in favor of granting final approval under Rule 23(e)(2)(B).

### 3. Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair, Reasonable, and Adequate.

#### i. *Jones Factor 1: The Settlement was Fairly and Honestly Negotiated.*

Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This presumption reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, the Parties engaged in a full-day mediation session with well-regarded mediator, Bennett G. Picker. Federman MPA Decl., ¶ 4. Although the mediation did not result in a settlement, significant progress was made. *Id.* The Parties eventually accepted a mediator's proposal after further discussions with the Mediator and careful consideration of the proposal. *Id.* The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Picker supports the conclusion that the

Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011). Thus, this factor weighs in favor of final approval.

### ii. Rule 23(e)(2)(C)(i) and Jones Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of a successful result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue Avem would likely assert several potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses Avem could assert—but it is obvious that their success at

13

trial is far from certain. *See* Federman Decl., ¶¶ 4–6. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Therefore, this factor also supports final approval of the Settlement.

### iii.     *Jones Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.*

The Settlement guarantees Class Members real relief and value for their harms as well as protections from future fall-out from the Data Security Incident. The proposed settlement provides a $1,450,000.00 Settlement Fund from which the approximately 271,303 Settlement Class Members can submit a claim for substantial relief, as outlined above. This compares quite favorably to terms approved by courts in similar data breach cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,* No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million – approximately $0.76 per class member); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action involving more than 1 million people that settled for $4.35 million – approximately $4.35 per class member); *Winstead v. ComplyRight, Inc*., No. 1:18-cv-04990 (N.D. Ill.) (data breach class action involving 665,689 that settled for $3.025 million – approximately $4.54 per class member). Accordingly, the third *Jones* Factor is satisfied.

### iv.     *Jones Factor 4: The Parties and their Counsel Agree that the Settlement is Fair and Reasonable.*

The judgment of the Parties and their counsel also supports the finding that the settlement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied

upon published reports documenting data breach and identity theft costs, their own experience in other data breach litigation, and reported settlements in other data breach class actions. The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who has litigated numerous data breach cases, spoken to victims of other data breaches, and has reviewed claims data from other settlements, the relief provided by this Settlement is an outstanding result for the Class. Federman MPA Decl., ¶ 8, Ex. B; Federman Decl., ¶ 18.

Moreover, the proposed Settlement creates a non-reversionary common fund that does not provide any preferential treatment to the named Plaintiffs or any segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Settlement Class Members are eligible to recover damages for any injuries caused by the Data Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also applied for service awards for the Settlement Class Representatives. The Tenth Circuit has held that courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts

they make on behalf of the class." *Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). A service award to Plaintiffs is appropriate here given their efforts and participation and does not constitute preferential treatment. *See McPherson v. American Bank Systems*, No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) (ECF No. 73) (approving service award in data breach class action of $1,500 per representative plaintiff).

> **v.    *Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective.***

As explained above, Class Members are eligible to make a claim for Out-of-Pocket Losses, Lost Time, Credit Monitoring, and/or an Alternative Cash Payment.  The claims may be prorated, if necessary. *See* SA, ¶ 67.  The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. *Id.* ¶ 78. In the event funds remain in the Settlement Fund after all approved claims are paid, Settlement Class Members who have submitted a valid claim will be eligible to receive an additional residual payment up to $95.00. *Id.* ¶ 34.

Thus, the only difference in treatment among Class Members is that those who incurred and submit Out of Pocket Loss and Lost Time Claims will—appropriately and equitably—receive payments in proportion to the amount of their out-of-pocket losses, which must be supported with documentation. All Class Members who submit valid Alternative Cash Payment Claims will receive the same payment. The 90-day claim period is sufficiently long to enable all eligible Class Members to collect any necessary

information before submitting their claims.  For these reasons, the plan of distribution is both equitable and effective.

### vi.    *Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable.*

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel filed a Motion for Award of Attorney's Fees, Reimbursement Of Litigation Expenses, and Service Awards to Plaintiffs concurrently herewith, requesting $435,000.00 in attorney's fees and $13,788.58 in reasonable expenses. SA, ¶¶ 91, 93. These requests are contemplated by the Settlement Agreement and Class Counsel apprised the Court of these requests in their Motion for Preliminary Approval filed August 18, 2023. *Id.*; ECF No. 53. This was also clearly delineated in the notice materials sent to the Settlement Class.  *See* ECF Nos. 54-2, 54-4, 54-5.

This request is well within the typical range approved in the Tenth Circuit and elsewhere and poses no impediment to final approval. *See McPherson v. American Bank Systems*, No. CIV-20-1307(G) (W.D. Okla. Mar. 27, 2023) (ECF No. 73) (Honorable Judge Charles B. Goodwin awarded thirty percent of the common fund in attorney's fees in a similar data breach case); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (finding that attorney's fees equal to one-fourth to one-third of a settlement are "well within the range of reasonable and permissible fees and costs awards in class action litigation."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% and 30% of the fund").

For these reasons and based on Class Counsel's experience in similar class litigation, Class Counsel is of the opinion that the settlement is fair, adequate, and reasonable, and should be finally approved by the Court.

## V. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When a settlement is reached before certification, a court must also determine whether to certify the settlement class. *See, e.g., Manual For Complex Litigation*, § 21.632 (4th ed. 2014); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g., Harris v. Chevron U.S.A.*, Inc., No. CIV-15- 0094-PRW, 2019 WL 5846917, at *2 (W.D. Ok. July 29, 2019). The Court previously provisionally certified the Settlement Class based on these criteria, and final settlement class certification is warranted for the same reasons.

### A. The Rule 23(a) Requirements Are Satisfied

**Numerosity:** Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Tenth Circuit have determined that numerosity has been satisfied where classes consisted of 50 or 100 members. *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (collecting cases). Here, the proposed class consists of approximately 271,303 individuals. As such, the numerosity requirement is plainly met.

**Commonality:** Rule 23(a)(2) requires "questions of law or fact common to the class." The proponents of certification must identify a common contention "'of such a

nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words, a finding of commonality requires only a single common question of law or fact. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

In this case, all members of the proposed class assert that their PII/PHI was compromised as a result of the Data Security Incident. Thus, their claims will involve numerous common questions of law and fact that will be resolved in the same way for all class members, such as whether Avem owed Plaintiffs and Class Members a duty to handle their PII/PHI with reasonable care, and whether Avem's data security practices were inadequate to the point of breaching that duty. *See, e.g., Naylor Farms*, 923 F.3d at 789 n. 10 (explaining that whether a defendant breached a duty allegedly owed to all class members is a common question). Therefore, the commonality requirement is met.

**Typicality:** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The interests and claims of named plaintiffs and class members "need not be identical," provided they are "based on the same legal or remedial theory." *DG ex rel. Stricklin*, 594 F.3d at 1198–99. The typicality requirement is satisfied where the interests of named plaintiffs and class members are not significantly antagonistic to one another, and where the harm or risk of harm faced by the named plaintiffs and class members stem from the same alleged conduct on the part of the defendant. *See id*. at 1199. Here, the claims of Plaintiffs and Class Members are the same

and there are no significant differences among them. Plaintiffs and all Class Members allege their PII/PHI was exposed in the same Data Security Incident due to Avem's deficient data security practices. As such, typicality is satisfied.

**Adequacy of Representation:** Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class as they all seek to recover for the harm they incurred as a result of the Incident. *See* Federman MPA Decl., ¶ 10. Further, as stated above, Plaintiffs and their counsel have been vigorously representing Class Members, and their diligence resulted in an early settlement that will deliver meaningful relief to Class Members. Accordingly, the adequacy requirement is met.

## B. The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the predominance and superiority requirements are both met, warranting final approval of the Settlement.

**Predominance:** "[T]he predominance inquiry 'asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Naylor Farms*, 923 F.3d at 789 (*quoting CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Newberg on Class Actions*, § 4:49)). "Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members. "The focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020), aff'd in part, rev'd in part and remanded, 999 F.3d 1247 (11th Cir. 2021) (quoting *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018)). The only potentially individualized issue here is damages, which does not defeat predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** The superiority inquiry requires courts to consider class members' interest in individually controlling the litigation, the extent and nature of any litigation already begun by class members, and the desirability or undesirability of concentrating the

litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C). All these factors weigh in favor of finding the superiority requirement is met in the case at bar. For most of the 271,303 class members, individual damages are likely to be too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that makes litigation costly. *See Anthem*, 327 F.R.D. at 315–16. Litigating the claims of hundreds of thousands of class members—which would require presentation of the same evidence and expert opinions many times over—would be manifestly inefficient here. Because class treatment is superior to individual litigation, superiority is satisfied.

## VI.    THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS

As the Court preliminarily found, the Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Administrator employed direct notice that appears to have been highly effective. *See generally*, Simpluris Decl. On February 1, 2024, Simpluris received one (1) file from Defense Counsel containing 271,303 records of potential class member names and mailing addresses. *Id.* ¶ 3. Of the 271,303 records, there were 69,826 records with missing mailing address information. *Id.* After performing standard data hygiene and deduplication analysis, Simpluris identified 200,880 unique member records with valid mailing addresses. *Id.* Prior to mailing, Simpluris updated the mailing address information for all class members via the USPS National Change of Address ("NCOA") database,

which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS. *Id.* Additionally, all addresses were processed through the USPS Coding Accuracy Support System ("CASS") and Locatable Address Conversion System ("LACS") to ensure deliverability. *Id.*

On February 23, 2024, Simpluris disseminated Summary Notices via U.S. First Class Mail to the 200,880 records with valid mailing addresses. *Id.* ¶ 4. As of April 18, 2024, 53,398 Summary Notices had been returned to Simpluris as undeliverable. *Id.* Of the pieces returned, 37,621 included forwarding address information or were updated with new addresses as a result of skip trace address research and the notices were promptly remailed to the updated addresses. *Id.* On April 5, 2024, Simpluris disseminated Reminder Summary Notices via U.S. First Class Mail to the 200,880 records with valid mailing addresses. *Id.* As of April 18, 2024, 23,732 Reminder Summary Notices were returned to Simpluris as undeliverable. *Id.* Of the pieces returned, 533 included forwarding address information or were updated with new addresses as a result of skip trace address research and the notices were promptly remailed to the updated addresses. *Id.*

Notice was also provided to Settlement Class Members via other indirect means. This settlement was featured on two websites, Top Class Actions, published on March 20, 2024, and The HIPAA Journal, published on March 20, 2024. *Id.* ¶ 5. Class Counsel also posted notice of the Settlement on their website. Federman Decl., ¶ 12. Moreover, Simpluris established a Settlement Website. Simpluris Decl., ¶ 6. The Settlement Website was launched on February 23, 2024, and contained a Home page, a Frequently Asked

Questions page, an Important Documents page providing downloadable documents (including, among other filed documents, the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Long Form Notice (Spanish) and Claim Form), an Important Dates, a Contact page, and a module for class members to submit an Online Claim Form. *Id.* As of April 18, 2024, there have been 16,404 page views and 5,490 unique visitors to the Settlement Website. *Id.*

To date, the Settlement has been well-received by the Settlement Class. Class members have until May 25, 2024, to either submit an Online Claim Form or mail in a Postcard Claim Form or Paper Claim Form. *Id.* ¶ 9.  As of April 18, 2024, Simpluris had received 1,073 timely Online Claim Form submissions, zero (0) late Online Claim Form submissions, 2,936 timely Postcard Claim Forms, zero (0) late Postcard Claim Forms via mail and ten (10) timely Paper Claim Forms, and zero (0) late Paper Claim Forms via mail. *Id.* However, these are not final totals, after the Final Fairness Hearing, Settlement Class Members will still have an additional two weeks to submit their claims.

Plaintiffs submit that the Notice Program issued pursuant to the Settlement meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

## VII.    CONCLUSION

For the reasons set forth above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiffs respectfully request that the Court enter the proposed this Court enter the proposed Final Approval

Order filed herewith, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as Settlement Class Representatives.

Dated: April 25, 2024

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
*wbf@federmanlaw.com*

*Counsel for Plaintiffs & the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman